KATHARINA O'NEILL, Plaintiff, *v.* STEPHAN DERDERIAN, Defendant.

Municipal Court of New York, Borough of Manhattan, Seventh District, November 29, 1930.

*Charles J. Lane,* for the plaintiff.

*Samuel A. Zucker,* for the defendant.

LEWIS, D. C., J. Under date of May 15, 1928, Katharina O'Neill, as landlord, leased to Anton Engels, as tenant, " That certain five story and basement *apartment house* and lot, commonly known and designated as 132 West 113th Street, in the Borough of Manhattan, City, County and State of New York, for the term beginning May 1st, 1928, and ending September 30th, 1938, at a yearly rental or sum of $4,500, to be used and occupied *only for furnished rooms.*"   (See landlord's Exhibit 1.)   (Italics mine.)

The lease further expressly restricts the use of the demised premises by confining this privilege to persons of the white race. (See par. 23.)

This lease was transferred by mesne assignment to Zafia Petro, and thereafter on or about April 19, 1930, was, with the landlord's consent, further assigned to this tenant, who assumed all of the obligations in said lease.

This agreement transferring the lease was executed by this landlord together with the present tenant and his assignor, and said assignment included the tenant's right to the security of $375.

On April 28, 1930, nine days after the lease was assigned to this tenant and assumed by him, the Multiple Dwelling Law (Laws of 1929, chap. 713) went into effect.

The premises in question were originally constructed and classified as a tenement house and the certificate of occupancy so provided. As a tenement house the premises come within class " A " of the Multiple Dwelling Law, but as a rooming house fall in class " B " of said Multiple Dwelling Law.   (See Multiple Dwelling Law, § 4, subds. 4 and 5.)

In fact, practically every room in this house was being used as a furnished room rented out separately.

About November 1, 1930, violations were filed by the tenement house department against the premises in question, charging that use of the same was in violation of section 82 of the Multiple Dwelling Law, and ordering the discontinuance of the use of the apartments as a rooming house and that same be restored to its original occupancy. (See defendant's Exhibit " A.")

The tenant has refused to pay the rent which became due under the lease on the first day of November. Thereupon, this landlord instituted these proceedings, based entirely upon the obligation of the tenant to pay the rent provided for in said lease and upon default in complying with the same. The tenant has interposed a general denial, a separate defense of the breach of the covenant of quiet enjoyment by reason of the act of the tenement house department, and a counterclaim for the return of the security of $375.

The expression " Furnished rooms " is not a new one. The words " furnished rooms " have been commonly used and understood and have had a fixed, definite meaning.

The Multiple Dwelling Law (§ 4, subd. 7) defines a rooming house as follows: " A ' rooming house' or a ' lodging house ' is any Class ' B ' multiple dwelling, other than a hotel in which persons either individually or as families are housed or lodged for hire or otherwise, with or without meals."

But were there any doubt of the sense in which the parties employed the term " furnished rooms " the use to which the premises were put eliminated it.

Section 82 of the Multiple Dwelling Law prohibits the use of any apartment in a class " A " dwelling for a rooming or lodging house subject to certain exceptions not pertinent to the present case. In passing, it might be commented that aside from these statutory definitions the premises were rented not to be used as furnished apartments, but to be used and occupied only for furnished rooms. Mindful of the objects of the statute and of the intent of the parties one is lead to the conclusion that to subject these demised premises to the use provided by the lease is an unlawful undertaking and as such is void, hence, unenforcible. (See *Saportes* v. *Hayeck*, 111 Misc. 620; *Municipal Metallic Bed Mfg. Corp.* v. *Dobbs*, 253 N. Y. 313; *Hart* v. *City Theatres*, 215 id. 322.)

" A plaintiff cannot recover if he is compelled to predicate his cause of action on an illegal contract." (See *Municipal Metallic Bed Mfg. Corp.* v. *Dobbs, supra.*)

" Courts will not be astute to sustain contracts when the effect will be to weaken the efficacy of laws and regulations designed for the protection of human life. Where a contract on its face, whether so intended by the parties or not, offends against statutes intended to promote public safety, the courts will not enforce it." (*Hart* v. *City Theatres, supra,* 330.)

The fact that the use may have become essentially unlawful after the execution and operation of the lease, but during its term does not save it from the taint of illegality.

" When, therefore, on the 29th of January, 1920, the principal use of the premises for saloon purposes became unlawful, the lease became terminated by operation of law in the absence of any agreement between the parties for a different use of the premises thereunder." (*Doherty* v. *Eckstein Brewing Company,* 198 App. Div. 708, 711.)

" The use of the premises specified in the lease being illegal the lease was void." (*Shontz Co.* v. *Laffay,* 225 App. Div. 263, 266.)

To say that either party contemplated changing the nature of the demised structure to comply with a law subsequently enacted, converting it from an ordinary tenement house into a building classified as class " B " under the Multiple Dwelling Law, would read into the agreement something apparently never in the minds of the parties and not in their compact. It would involve a reconstruction — not a construction of the lease.

The high purposes of the Multiple Dwelling Law — the protection of human life and limb — is far more important than the preservation of alleged contract rights. Between serving the expressed intent of the law and conserving any implied intent of the parties there is no alternative. The contract must yield.

The express, restricted purposes of the hiring now being prohibited by law, the lease is brought to an end. It cannot furnish the basis of the landlord's claim to rent against this tenant, and it cannot furnish the basis of the tenant's claim to the continued use and occupancy against this landlord.

While the landlord has a right to possession he has mistaken the theory of his remedy.

The tenant remaining in possession cannot at this time recover his security.

Petition dismissed without prejudice. Counterclaim dismissed without prejudice.