EUCLID HOLDING COMPANY, Plaintiff, *v.* DAVID A. SCHULTE and Others, Defendants.*

Municipal Court of New York, Borough of Manhattan, Fifth District,
September 5, 1934.

*Simpson, Thacher & Bartlett* [*Robert H. O'Brien* of counsel], for the landlord.

*Jerome Eisner* [*Henry I. Fillman* of counsel], for the tenants and undertenants.

PRINCE, J.   This is a summary proceeding to recover the possession of real property in which the landlord also seeks to recover a judgment in the sum of $17,330.92 with interest, which sum represents real estate taxes on the premises which it was the duty of the tenant under the lease to pay.   The tenant having defaulted in the payment of said taxes, the landlord made the payment, and, under the terms of the lease, all amounts so expended by the landlord become additional rental payable under the lease.

* Revd., 153 Misc. 832.   See, also, *Minton* v. *Schulte, Inc.* (Id. 195).

The premises involved are known as 2341–2359 Broadway, 251 West Eighty-fifth street, and 250 West Eighty-sixth street in the borough of Manhattan, city of New York. The lease involved was made on December 10, 1919, between Euclid Holding Company, landlord, and David A. Schulte, tenant. The faithful performance of the tenant was guaranteed by a New York corporation, D. A. Schulte, Inc. Later, on April 7, 1920, the lease was assigned to Dasco Realty Corporation with the consent of the landlord, upon condition, however, that the assignment should not operate to relieve David A. Schulte of any liability whatsoever under the said lease. The lease is for a term of twenty-one years commencing October 1, 1920, and expiring on September 30, 1941. The Dasco Realty Corporation, the assignee, assumed the performance of the lease, and, since the commencement of the term, has been in possession of the premises.

On April 1, 1934, real estate taxes upon the said premises for the first half of the year 1934 in the sum of $16,932 became due and payable to the city of New York. The tenant defaulted in the payment thereof, and said default continued for more than sixty days. On June 26, 1934, the landlord paid to the city of New York the sum of $17,330.92 in payment of said real estate taxes plus the interest which had accrued. In accordance with the terms of the lease, the landlord, having made such payments, was empowered to regard it as additional rental under the lease. It is conceded that no part of the sum of $17,330.92 has been paid to the landlord by the tenant although duly demanded. And this proceeding is now brought for the possession of the premises for the non-payment of $17,330.92.

The answer admits practically all of the allegations of the petition. The only question which arises in the case arises by virtue of the affirmative defenses set forth in the answer.

Under such affirmative defenses set forth in their respective answers the original tenant, David A. Schulte, the guarantor, D. A. Schulte, Inc., and the tenant in possession, Dasco Realty Corporation, contend that the lease, when made, was and now is illegal, and the occupancy of the premises has been and still is unlawful because no certificate of compliance had been secured by Euclid Holding Company from the tenement house department and no certificate of occupancy had been secured by it from the superintendent of buildings for the premises after the completion of certain alterations made by it in 1916 and 1917, which alterations are claimed to come within the provision of the Building Code of the city of New York.

The answers also allege a disaffirmance and rescission of the lease by reason of its invalidity, and an offer is made in the answers to

release and discharge Euclid Holding Company from any obligation on its part under the lease and to execute any formal document for the purpose of effecting said disaffirmance and rescission. Dasco Realty Corporation, the tenant herein, also counterclaims for the recovery of the fixed rent, real estate taxes, insurance and water taxes paid by it since taking possession of the premises.

Commencing in the latter part of 1916 and running into the year 1917, Euclid Holding Company, the landlord, made an alteration to the building, which resulted in changing the first-story apartments into retail stores. It is not disputed that no certificate of occupancy was secured from the superintendent of buildings after the completion of such alteration and that no such certificate of occupancy had been secured prior to the making of the lease involved in this proceeding, and none has ever since been secured.

The unique and interesting question thus presented is whether the parties made a lease which is illegal by reason of the failure of the landlord to secure a certificate of occupancy for the building after the completion of such alteration, which in point of time was prior to the execution of the lease.

Section 411-a of the Greater New York Charter, effective May, 1916 (Laws of 1916, chap. 503, § 5),* provides as follows: " Buildings hereafter altered. No building hereafter altered or converted from one class to another class shall be occupied or used in whole or in part for any purpose whatever, in case such building was vacant during the progress of the work, or in case such alteration did not necessitate the vacation of the building during the progress of the work the occupancy or use of any such building shall not continue more than thirty days after the completion of such alteration, unless a certificate of occupancy shall have been issued by the superintendent of buildings of the borough in which such building is situated in such form as may be authorized by the building code." (Subd. 2.)

Section 5, subdivision 2, of the Building Code of the city of New York, also effective March, 1916, provides: " Buildings hereafter altered. No building hereafter altered, which was vacant during the progress of the work of alteration, shall be occupied or used, in whole or in part, for any purpose whatever, until a certificate of occupancy shall have been issued by the superintendent of buildings certifying that the work for which the permit was issued has been completed substantially in accordance with the approved plans and specifications and the provisions of this chapter applying to such an alteration; and when the occupancy or use of a building has con-

* Now Greater New York Charter, § 412, subd. 2, added by Laws of 1933, chap. 764.— [Rep.

tinued during the work of alteration, the occupancy or use of the building shall not continue for more than 30 days after completion of the alteration unless such certificate shall have been issued."

In subdivision 4 of the same section of the Building Code, entitled, " Change of occupancy," it is provided: " No change of occupancy or use shall be made in any building or part thereof, hereafter erected or altered, that is not consistent with the last issued certificate of occupancy for such building. In case of any now existing building, no change of occupancy that would bring it under some special provision of this chapter, shall be made, unless a certificate is issued by the superintendent of buildings certifying that such building conforms to the provisions of this chapter with respect to buildings hereafter altered for the proposed new occupancy and use."

In addition to the certification required by section 5 of the Building Code as to compliance with approved plans and specifications and the provisions of that chapter, all certificates of occupancy " shall state the purposes for which the building may be used in its several parts, the maximum permissible live loads on the several floors, the number of persons that may be accommodated in the several stories, in case such number is limited by any provision of this chapter or the approved specifications, and all special stipulations of the permit, if any." (Building Code, § 5, subd. 6.)

The code contains specific provisions for its enforcement. (See §§ 650, 652, 653.) Section 654 imposes a penalty of ten dollars to fifty dollars for each violation upon any person who violates any provision of the code.

The Greater New York City Charter has the force of statute law, and the Building Code likewise has all the force of a statute in the city of New York. (See *Hart* v. *City Theatres Company*, 215 N. Y. 322; *Gordon* v. *Automobile Club of America*, 101 Misc. 724.)

Upon the trial counsel for the tenant placed great stress upon the provisions of the Tenement House Law, re-enacted since 1929 in the Multiple Dwelling Law, under which provisions it would appear that, where a material alteration is made, not for the purpose of complying with the Multiple Dwelling Law, a certificate of compliance is necessary before the building may be lawfully occupied. It was also urged that, since no certificate of compliance had ever been issued with respect to the premises, an action for rent or summary proceeding could not lie. (Multiple Dwelling Law, §§ 301, 302.)

For the purpose of this decision it is unnecessary to consider the application of these sections of the Multiple Dwelling Law, since, if no certificate of occupancy was issued, the failure to procure a certificate of compliance is not the determining factor in the case. The provisions quoted of the Charter and Building Code are safety meas-

ures designed for the protection of occupants of buildings and to prevent the maintenance thereof " to the detriment of the workers or dwellers therein, as the case may be." (See *People* v. *Whitelow*, 166 N. Y. Supp. 141, 150.)

Courts have consistently adhered to the principle that a contract, made in violation of a statute, is an unlawful undertaking, and, as such, is void and unenforcible. (See *Gas Light & Coke Co.* v. *Turner*, 7 Scott, 779; 8 id. 609; *Hart* v. *City Theatres Company*, 215 N. Y. 322, 330; *Morgan Munitions Co.* v. *Studebaker Corp.*, 226 id. 94; *Crocker* v. *Whitney*, 71 id. 161; *Sirkin* v. *Fourteenth Street Store*, 124 App. Div. 384; *Swing* v. *Dayton*, Id. 58; affd., 196 N. Y. 503; *O'Neill* v. *Derderian*, 138 Misc. 488.) (See, also, Restatement of the Law of Contracts, § 580.)

A contract which violates a city ordinance has also been held illegal to the same extent as a contract violating an enactment of the Legislature. In *Burger* v. *Koelsch* (77 Hun, 44) it was held that " City ordinances have the force of law, and contracts in violation of them are illegal and void, whether the parties knew the law or not. * * * When it is made to appear upon the trial of an action that the object thereof was to enforce an illegal contract, it is the duty of the court to refuse to proceed further with the action and to leave the parties where they have placed themselves." (Headnote.)

A reading of the provisions of the Greater New York Charter and the Building Code of the city of New York results in the unescapable conclusion that a certificate of occupancy is required before a building can be lawfully occupied, where either it is materially altered or an alteration is made, which contemplates a change in the character or use of the occupancy of the whole or a portion thereof. The alteration made by the landlord was no unimportant change, but called for work involving a material structural change. Indeed, an official of the building department, called as a witness, testified that such alteration required a certificate of occupancy upon its completion. It, therefore, logically follows that any occupancy of the building after the completion of such alteration without the issuance of the requisite certificate of occupancy would be unlawful, and that the lease contemplated an unlawful occupancy by reason of the express prohibition of the charter and ordinances, and that the landlord and the tenant, in making the lease, bargained with respect to the giving and the taking of a lease of a building, the use and occupancy of which at the time of the bargain was unlawful.

On the face of it, the defense of illegality of the lease is unconscionable, yet we must refuse to enforce a contract which is unlawful without regard to the effect on the parties. As stated in the lan-

guage of Lord MANSFIELD in *Holman* v. *Johnson* (1 Cowp. 341, 343):
" The objection, that a contract is immoral or illegal as between
plaintiff and defendant, sounds at all times very ill in the mouth of
the defendant. It is not for his sake, however, that the objection
is ever allowed; but it is founded in general principles of policy,
which the defendant has the advantage of, contrary to the real
justice, as between him and the plaintiff, by accident, if I may so
say. The principle of public policy is this; *ex dolo malo non oritur
actio*. No court will lend its aid to a man who founds his cause of
action upon an immoral or an illegal act. If, from the plaintiff's
own stating or otherwise, the cause of action appears to arise *ex
turpi causa*, or the transgression of a positive law of this country,
there the court says he has no right to be assisted." (Cited with
approval by CRANE, J., in *Reiner* v. *North American Newspaper
Alliance*, 259 N. Y. 250, 260.)

As the purposes of the Charter and Building Code provisions are
for the protection of human life and limb, the lease must yield to the
express intent of the law. (*O' Neill* v. *Derderian, supra.*) In the
language of the Court of Appeals, in *Hart* v. *City Theatres Company*
(*supra*): " Courts will not be astute to sustain contracts when the
effect will be to weaken the efficacy of laws and regulations designed
for the protection of human life. Where a contract on its face,
whether so intended by the parties or not, offends against statutes
intended to promote public safety, the courts will not enforce it."

The lease, violating the statute and ordinances, was not
given validity by the retention of possession and the payment of
rent. The statute and ordinances were enacted for public safety
and welfare, and the actions of the parties to a contract, which is
illegal because it violates such statute and ordinances, will not work
a waiver or estoppel. The doctrine of estoppel or waiver cannot be
invoked when the law violated is not purely a matter of private
right, but one which is aimed to protect the public. (See *Parthey*
v. *Beyer*, 228 App. Div. 308.) (See, also, *Sirkin* v. *Fourteenth
Street Store, supra; Strauss Linotyping Company* v. *Schwalbe*, 159
App. Div. 347; *Levy* v. *Brush*, 45 N. Y. 589.)

For the reasons herein stated, I am constrained to hold that
the lease, being illegal and void, cannot furnish the basis of the peti-
tioner's claim to rent or the basis of a summary proceeding for the
non-payment of rent thereof and cannot be the basis of any claim by
the tenant against the landlord for rent or sums deemed additional
rent paid thereunder. The tenant, being in possession under that
lease, which is ineffectual to vest any term in the premises in the ten-
ant by reason of the illegality, became a tenant at will and liable for
the use and occupation of the premises.

Upon the trial the petition was dismissed as against the guarantor on the ground that a summary proceeding, being a possessory remedy, lies only against the tenant in possession and those in possession under the tenant. For this reason the petition must likewise be dismissed against the original tenant, David A. Schulte, who concededly is not in possession of the premises.

For the foregoing reasons, the petition is dismissed, and the counterclaims likewise are hereby dismissed.