26 N.J. Super. 214 (1953)
97 A.2d 745
EGLINTON H. MONTGOMERY, PLAINTIFF,
v.
LUCIUS WILMERDING, JR., AND PHILIP BASTEDO, EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF LUCIUS WILMERDING, DECEASED, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 24, 1953.
*216 Messrs. Kristeller & Zucker (Mr. Lionel P. Kristeller appearing), attorneys for plaintiff (Mr. Perry D. Trafford, Jr., of the New York Bar, on the brief).
Messrs. Pitney, Hardin & Ward (Mr. Frank C. O'Brien appearing), attorneys for defendants.
STEIN, J.S.C.
Plaintiff brings this suit for a declaratory judgment of the rights of the parties under a certain agreement dated October 1, 1936 made between plaintiff, Eglinton H. Montgomery, Ruth Wilmerding Montgomery and Lucius Wilmerding.
The facts are stipulated. Plaintiff and Ruth Wilmerding Montgomery were formerly husband and wife. Two daughters were born of their marriage. On August 3, 1934 plaintiff and his wife entered into a written agreement in which it is recited that they had been living apart since August 1933 and that Mrs. Montgomery was about to institute an action for absolute divorce in the State of Nevada. The agreement provided for the custody of the two children and visitation by their father. It provided for payment by the wife to the husband of the sum of $50 per week during the joint lives of both, such payments to be guaranteed by Lucius Wilmerding, father of the wife. The wife agreed to pay plaintiff $500 in cash and to pay $500 to his attorney. Plaintiff agreed to appoint an attorney to appear for him in the divorce action in Nevada. Annexed to the agreement was an instrument executed by Lucius Wilmerding guaranteeing the weekly payments by the wife to the plaintiff. Plaintiff in his brief says this agreement was prepared and executed by the wife in Nevada and forwarded to the plaintiff in New York where it was executed by him.
*217 A decree of divorce was entered in the Nevada court on August 27, 1934.
Later an agreement was entered into between plaintiff and his former wife on February 13, 1936. By the terms of that agreement plaintiff consented that the children be taken abroad by their mother and be returned to the United States by July 30, 1936; plaintiff's former wife agreed to pay to plaintiff not less than $300 nor more than $400 per month for the children's support, maintenance and nurse care while the children were visiting with plaintiff during the summer vacation of 1936, and the agreement provided "that it shall not be construed as a modification of the aforesaid agreement dated August 3rd, 1934."
The agreement of October 1, 1936, which is the subject matter of this suit, was entered into between plaintiff, his former wife, and her father, Lucius Wilmerding. By the terms of the agreement custody of the children was given to Mrs. Montgomery free from the control of the plaintiff. It provided for the appointment of a guardian of the person and property of the children and visitation by the plaintiff. Lucius Wilmerding agreed therein to pay plaintiff the sum of $50 per week during the joint lives of plaintiff and his former wife, and a further sum of $25 per week during the life of the plaintiff. These payments were guaranteed by plaintiff's former wife. It was also provided that this agreement shall entirely supersede the agreements of August 3, 1934 and February 13, 1936.
Lucius Wilmerding died on July 15, 1949. The defendants are the executors under his will. Plaintiff failed to receive his weekly payments after June 6, 1952, and thereupon filed a claim with executors for the amount due him. The claim was rejected and plaintiff now brings this action.
The weekly payments under the agreements from 1934 to June 6, 1952 were made by check of a stock brokerage firm of which said Lucius Wilmerding was a partner. These payments were by the brokerage firm charged one-half to the account of Lucius Wilmerding and one-half to the account of his wife. The payments made after his death were *218 charged entirely to the account of his widow. The defendant-executors made no payment under the agreements. It is conceded that plaintiff had no knowledge of the actual source of the payments until after the institution of this suit.
The defendant-executors contend that the agreement of August 3, 1934 had for its object the divorce of the parties thereto and is therefore void as against public policy; that the agreement of October 1, 1936 lacks consideration and is void as being against public policy for the reason that it had for its object the evasion by plaintiff of his legal duty to support his children. On the other hand, plaintiff contends that the agreement of August 3, 1934 was approved by the Nevada court in the divorce proceeding and is entitled to full faith and credit under the full faith and credit clause of the United States Constitution; that the consideration for the agreement of October 1, 1936 was the cancellation of the agreement of August 3, 1934; that because defendant's testator made payments under the agreement for a long period of time the defendant-executors are now estopped from contesting its validity.
The illegality of a contract is to be determined by the law of the place of the contract. If that law makes the contract itself illegal, of course, it is void everywhere. Staedler v. Staedler, 6 N.J. 380 (1951). The agreement of August 3, 1934 was consummated in the State of New York and the agreement of October 1, 1936 was made and executed in the same state, wherefore their validity is to be tested by the law of the State of New York.
An agreement tending to dissolve the marriage of the parties is against public policy. Schley v. Andrews, 225 N.Y. 110, 121 N.E.2d 812 (Ct. App. 1919); Reed v. Robertson, 195 Misc. 885, 91 N.Y.S.2d 583 (Sup. Ct. 1949), reversed 276 App. Div. 902, 94 N.Y.S.2d 905 (App. Div. 1950), affirmed 302 N.Y. 596, 96 N.E.2d 894 (Ct. App. 1951). The law in this State is to the same effect. Staedler v. Staedler, supra. In Reed v. Robertson, supra, the situation was closely akin to the one here involved. The trial court's opinion (91 N.Y.S. 583) discloses that the parties *219 to the contract were separated for about two years. The contract there provided that the plaintiff (husband) would enter a personal appearance in an action for divorce instituted by the defendant (wife) in Nevada; that the defendant would make certain monthly payments to the husband, and also contained provisions relative to the custody of a child of the marriage. The trial court held that the contract was valid. On appeal the Appellate Division (94 N.Y.S.2d 905) held:
"* * * The record in this case convinces us that the agreement sued upon, in the light of its background, circumstances and provisions, was an agreement tending to dissolve the marriage of the parties, Schley v. Andrews, 225 N.Y. 110, 121 N.E.2d 812, and to relieve the husband from his liability to support his wife, in contravention of * * * the Domestic Relations Law of this State and the corresponding public policy of the State of New Jersey."
The agreement of August 3, 1934 here under consideration contains no other or different provisions than the agreement in the cited case which would except it from the operation of the public policy rule laid down in that case. The provisions of the agreement here under consideration makes inescapable the conclusion that it had for its object the divorce of the parties; hence it is illegal and void as against public policy.
Plaintiff's contention that the entire agreement was approved by the Nevada court and as so approved was embodied in its decree is without merit. The Nevada decree of divorce provides
"that the provisions of that certain agreement dated August 3rd, 1934, wherein the matter of the custody of the minor children of the parties * * * is adjusted between the parties out of Court, be, and the same are hereby ratified, approved, and adopted by this Court, and made a part of this Decree."
The decree of divorce embodies only the provisions of the agreement in relation to the custody of the children  nothing more.
*220 Where a contract grows out of, and is connected with a prior illegal contract, the illegality of such prior contract will enter into the new contract and render it illegal. 17 C.J.S., Contracts, § 285; Barton v. Port Jackson and Union Falls Plank Road Co., 17 Barb. 397 (N.Y. Sup. Ct. 1854); Sirkin v. Fourteenth St. Store, 124 App. Div. 384, 108 N.Y.S. 830 (App. Div. 1908); Horbach v. Coyle, 2 F.2d 702 (2 Cir., Neb. 1924). An examination of both the August 3, 1934 agreement and the October 1, 1936 agreement by express language shows that the latter grew out of the former. The two are united in both consideration and promise. It is not shown or suggested that there was a new consideration for the latter agreement. On the contrary, plaintiff relies upon the cancellation of the former agreement as the consideration for the latter, all of which leads to the conclusion that the agreement of October 1, 1936 is tainted with the illegality of the former agreement and is likewise illegal and unenforceable.
A party to an illegal contract cannot either at the time of its execution or afterward waive his right to set up the defense of illegality in any action brought by the other party. 17 C.J.S., Contracts, § 279(b); Euclid Holding Co. v. Schulte, 153 Misc. 455, 274 N.Y.S. 515 (Mun. Ct. 1934); reversed on other grounds 153 Misc. 832, 276 N.Y.S. 533 (Sup. Ct. 1934). An agreement void as against public policy or prohibited by law cannot be rendered valid by invoking the doctrine of estoppel. 17 C.J.S., Contracts, § 279(c); Levin v. Levin, 300 N.Y.S. 1042, 253 App. Div. 758 (App. Div. 1937); Euclid Holding Co. v. Schulte, supra. The doctrine of estoppel or waiver cannot be invoked when the law violated is not purely a matter of private right, but one which is aimed to protect the public. Euclid Holding Co. v. Schulte, supra; Geddis v. Westside Nat. Bank of W. Paterson, 7 N.J. Misc. 245 (Sup. Ct. 1929), affirmed 106 N.J.L. 238 (E. & A. 1930).
Judgment will be entered in conformity with the foregoing.