766 A.2d 1164 (2001)
337 N.J. Super. 252
JOE D'EGIDIO LANDSCAPING, INC., Plaintiff-Respondent,
v.
Daniel APICELLA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 18, 2000.
Decided February 13, 2001.
*1165 Hueston, McNulty & Mueller, Florham Park, attorneys for appellant, (Samuel J. McNulty, on the brief).
Dell'Italia, Affinito, Jerejian & Santola, Orange, attorneys for respondent, (Stacy A. Santola, of counsel and on the brief).
Before Judges WEFING, CUFF and LEFELT.
The opinion of the court was delivered by WEFING, J.A.D.
Following a bench trial, the trial court entered a judgment for plaintiff in the amount of $8,132.94 and dismissed defendant's counterclaim. Defendant has appealed. After a careful review of the record in light of the arguments advanced on appeal, we affirm, but not for the reasons expressed by the trial court.
The underlying dispute involves certain work that plaintiff[1] performed for defendant at defendant's home. Joe D'Egidio and defendant Apicella are related through marriage; Apicella's sister is married to D'Egidio's brother. The two men were together at a family function in February 1996, and discussed certain work that Apicella wished to have done at his home. The house was relatively new and the driveway remained unpaved. In addition, an easement adjoined Apicella's property upon which there were certain manholes *1166 which had been improperly covered over. The township was refusing to grant Apicella a certificate of occupancy until these manholes were excavated and corrected.
Apicella asked D'Egidio, who installs paver driveways as part of his landscaping business, to come to the property to look at it. D'Egidio did so and prepared an estimate of $12,000 to do both jobs. This price was significantly lower than others Apicella had received; D'Egidio told Apicella he was giving him a lower price because of the family connection between the two.
This was not the first time the two men had done work for one another. Apicella has a painting business; when D'Egidio moved into a new house a few years earlier, Apicella spent two days painting the house for him. When Apicella moved into his home, D'Egidio spent several days cleaning the yard and the easement.
Plaintiff prepared a contract for the job but Apicella refused to sign it. He professed to be insulted that D'Egidio wanted a signed contract, stressing he had known D'Egidio from the time that he, Apicella, was eight years old and that they were related through marriage.
Faced with Apicella's protestations, D'Egidio proceeded to perform the work without a contract and Apicella made two payments on account. Disputes developed on this project, however, and Apicella refused to pay the balance D'Egidio said was owed. D'Egidio testified that Apicella told him that unless D'Egidio performed certain landscaping work for free, Apicella would not pay him what he owed and would tie him up in litigation.
This lawsuit resulted. Apicella counterclaimed for damages, alleging the workmanship on the driveway was poor.
The parties presented significantly different versions at the trial of what transpired between them. It is clear from the trial court's letter opinion that it accepted plaintiff's version and rejected defendant's as not credible. Within its letter opinion, the trial court specifically noted that it accepted as true D'Egidio's testimony about Apicella's reaction to D'Egidio's request that he sign a contract.
One of the issues argued before the trial court was the consequence of plaintiff having proceeded to perform this work without having first obtained a written contract. Under N.J.A.C. 13:45A-16.2(12), a regulatory provision adopted under the Consumer Fraud Act, all home improvement contracts in excess of $200 are required to be in writing and signed by all parties and must specify the work to be done and materials to be used and include a beginning and ending date.
The Supreme Court has held that mere proof of a regulatory violation is sufficient to establish unlawful conduct under the Consumer Fraud Act. Cox v. Sears Roebuck & Co., 138 N.J. 2, 18-19, 647 A.2d 454 (1994). An aggrieved consumer does not have to establish an intent to evade or violate regulatory requirements; it is a matter of strict liability. Ibid.
The trial court here concluded in its written opinion that the Consumer Fraud Act was not applicable to the parties' relationship because, in the trial court's words, "This case is about family relationships, help and effort when requested, and not about the ordinary consumer facing a provider of services in the open marketplace." In effect, the trial court carved out a "family" exception to the scope of the consumer fraud statute.
We are unable to concur that family transactions such as this fall, per se, beyond the purview of the statute and the accompanying regulation. Indeed, notwithstanding the trial court's specific finding that "both parties specifically agreed to and understood the scope of the work," the dispute between the parties that subsequently developed is a good illustration of the need for such contracts to be in writing and to detail the nature of the work to be performed.
*1167 We are satisfied, nonetheless, that defendant is not entitled to the protections offered by the statute and the regulation because it was his own conduct which caused the violation. Were we to conclude that defendant is entitled to invoke N.J.A.C. 13:45A-16.2(12), the result would be to permit defendant to retain, at no cost, the fruits of D'Egidio's labor when he was the one who insisted a written contract was unnecessary in light of their long-standing relationship. It would also reward defendant with the remedial provisions of the consumer fraud statute. We consider such a result unacceptable; one who induces the alleged wrongdoing should not benefit as a result of it. See, Sears Mtge. Corp. v. Rose, 134 N.J. 326, 346, 634 A.2d 74 (1993) where the Court, in holding the buyer's title insurance company liable for acts of the buyer's attorney who absconded with the closing proceeds, noted that it "was in a position either to prevent or protect against the loss...." Not only did Apicella not "prevent or protect against the loss," he occasioned it.
Further, we consider it particularly inappropriate to permit Apicella to seek the protection of the consumer fraud statute and its implementing regulation in light of the trial court's clear view that Apicella's testimony at trial was not truthful.
In our judgment, the situation presented is an entirely appropriate one in which to invoke the equitable doctrine of estoppel.
Equitable estoppel has been defined as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse ..." The doctrine is "designed to prevent a party's disavowal of previous conduct if such repudiation `would not be responsive to the demands of justice and good conscience'."

[Heuer v. Heuer, 152 N.J. 226, 237, 704 A.2d 913 (1998) (citations omitted).]
While we are unaware of any reported authority which has applied the doctrine of equitable estoppel in the context of the Consumer Fraud Act, we are unable to perceive any reason in logic or policy which would lead to a conclusion that equitable estoppel is inapplicable. As the Court noted in Heuer, "[p]rinciples of equity must be applied in light of the totality of the circumstances." Heuer, supra, 152 N.J. at 235, 704 A.2d 913.
We recognize New Jersey's long-standing commitment to the protection of the consumer. We are fully cognizant of the fact that the consumer fraud statute is remedial legislation and should be liberally construed to accomplish its dual objectives of deterrence and protection. Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 139, 741 A.2d 591 (1999); Cox v. Sears Roebuck & Co., supra, 138 N.J. at 15, 647 A.2d 454.
We are satisfied, however, that in the unique circumstances presented here, we are not retreating from that commitment or weakening the scope of the statute's protective reach when we apply the doctrine of estoppel. Defendant is, as the trial court noted, in the home improvement business himself as a painter and as chargeable for knowing the applicable regulations as plaintiff. "The consumer fraud statute is aimed at promoting truth and fair dealing in the market place." Feinberg v. Red Bank Volvo, Inc., 331 N.J.Super. 506, 512, 752 A.2d 720 (App.Div. 2000). Permitting this defendant in the context of this case to invoke the statutory remedies afforded by the Consumer Fraud Act would not further those laudable legislative objectives.
Defendant has presented one other contention, that the trial court erred when it received into evidence a bill not previously provided during discovery. The argument does not warrant discussion in a written *1168 opinion, for it would have no precedential value. R. 2:11-3(e)(1).
The judgment under review is affirmed.
NOTES
[1] Giuseppe D'Egidio is the principal of the corporate plaintiff, Joe D'Egidio Landscaping, Inc. Throughout the proceedings below, all the participants referred to plaintiff simply as "Joe." We adopt that style for consistency.