928 A.2d 140 (2007)
395 N.J. Super. 132
Dennis M. SAMMARONE, Plaintiff-Appellant,
v.
James J. BOVINO; Town & Country Developers, Inc.; Whiteweld, Barrister & Brown, Inc.; and Stratland Homes, Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 2007.
Decided July 23, 2007.
*141 Angelo J. Genova, Livingston, argued the cause for appellant (Genova, Burns & Vernoia, attorneys; Mr. Genova, of counsel; Celia S. Bosco and Michael J. Grohs, on the brief).
James M. Hirschhorn, Newark, argued the cause for respondent (Sills Cummis Epstein & Gross, attorneys; Mr. Hirschhorn, of counsel; Athena S. Cheng, on the brief).
Before Judges WEFING, YANNOTTI and MESSANO.
The opinion of the court was delivered by
WEFING, P.J.A.D.
Plaintiff filed suit seeking to collect upon an alleged oral contract under which defendants, real estate developers, promised him compensation for introducing them to the owner of a valuable parcel of land. Defendants moved to dismiss the complaint for failure to state a claim, contending it was barred by the Real Estate Brokers and Salesmen Act, N.J.S.A. 45:15-1 to -29.5. After oral argument, the trial court granted defendants' motion and dismissed plaintiff's complaint four months after it was filed. Plaintiff has appealed. After reviewing the record in light of the contentions advanced on appeal, we reverse and remand for further proceedings.
Plaintiff's lawsuit arose from the following factual background. Because we are reviewing the trial court's granting of defendant's motion under R. 4:6-2(e), "we assume the truth of the allegations of the complaint, giving plaintiff the benefit of all reasonable factual inferences that those allegations support." F.G. v. MacDonell, 150 N.J. 550, 556, 696 A.2d 697 (1997). Plaintiff had a professional and personal relationship with Leona Helmsley *142 that had developed over the more than twenty years that he had served as executive chef to Mrs. Helmsley personally and to various of her business interests. Mrs. Helmsley was the president of Owners Maintenance Corp. and chief executive officer of Helmsley Enterprises, Inc. We shall hereafter refer to these entities as the "Helmsley Organization." The Helmsley Organization owned sixteen acres of land in Fort Lee adjoining the George Washington Bridge. It has been described as "one of the largest and most prominent pieces of remaining open land in southern Bergen County." We shall refer to this parcel as the "Helmsley tract".
Defendant Bovino is the chief executive officer of defendant Town & Country Developers, Inc. and defendant Stratland Homes, Inc., and president of defendant Whiteweld, Barrister & Brown, Inc. Town & Country and Stratland are in the business of real estate development and Whiteweld, Barrister & Brown is an investment firm serving their financial needs in connection with their various development projects. We shall hereafter refer to defendants as Bovino unless the context requires further specificity.
Bovino wished to acquire the Helmsley tract but had been unsuccessful in various attempts to gain an introduction to individuals in the Helmsley Organization. In October 2000 Lisa Massaroni, a Bovino employee, overheard James Bovino complaining to Jack Vaughn, Town & Country's executive vice president of sales and marketing, about his lack of success in this area. Ms. Massaroni is plaintiff's cousin, and she volunteered to the two men that her cousin had a close relationship with Mrs. Helmsley. Bovino asked her to speak to plaintiff to see if Bovino could contact him to discuss that relationship, and particularly Bovino's desire to meet Mrs. Helmsley and purchase the Helmsley tract.
Ms. Massaroni spoke to plaintiff on Bovino's behalf, and plaintiff acceded to Bovino's request. Thereafter, James Bovino and Jack Vaughn met with plaintiff and, in the words of the complaint, "explore[d] how Plaintiff could effect an introduction of Mrs. Helmsley to [the defendants] so they could explore and reveal to her their interest in purchasing" the Helmsley tract. During the course of that meeting, plaintiff agreed to facilitate the introduction of Bovino and his agents to Mrs. Helmsley and other individuals within the Helmsley Organization who would be involved in the decision to sell the Helmsley tract. Plaintiff also agreed to transmit information from Bovino to representatives within the Helmsley Organization on an as-needed basis, with the aim of facilitating the transaction. According to plaintiff, Bovino agreed that upon the purchase of the Helmsley tract, plaintiff would receive three percent of the purchase price and ownership rights both to a condominium and a dining/catering establishment that were to be built as part of the proposed development of the tract.
Plaintiff complied with his portion of the bargain and, after several years of negotiations, Bovino completed the purchase of the Helmsley tract for more than forty-six million dollars. Fort Lee, which had declared the tract an area in need of redevelopment, signed a redevelopment contract with Bovino. The redevelopment plan called for the construction of six hundred eleven townhouses, apartment units and high-rises, as well as one hundred thousand square feet of retail space, ninety thousand square feet of office space, and a nineteen-story hotel. The redevelopment agreement between Bovino and Fort Lee called for construction of the project to be completed within five years of the commencement *143 of construction. Construction would not begin until various approvals were obtained and environmental remediation, when needed, completed.
Plaintiff filed this suit when Bovino did not pay him the compensation they had agreed upon. In his complaint, plaintiff alleged breach of contract, breach of the covenant of good faith and fair dealing, quantum meruit, unjust enrichment, fraudulent misrepresentation, and promissory estoppel.
According to N.J.S.A. 45:15-1:
No person shall engage either directly or indirectly in the business of a real estate broker, broker-salesperson or salesperson, temporarily or otherwise, and no person shall advertise or represent himself as being authorized to act as a real estate broker, broker-salesperson or salesperson, or to engage in any of the activities described in R.S. 45:15-3, without being licensed so to do as hereinafter provided.
N.J.S.A. 45:15-3 defines a broker as:
a person . . . who, for a fee, commission or other valuable consideration, or by reason of a promise or reasonable expectation thereof . . . offers or attempts to negotiate a sale, exchange, purchase or rental of real estate . . . or solicits for prospective purchasers or assists or directs in the procuring of prospects or the negotiation or closing of any transaction which does or is contemplated to result in the sale, exchange, leasing, renting or auctioning of any real estate. . . .
This statute further specifies:
No person, firm, partnership, association or corporation shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker at the time the alleged cause of action arose.
There is no dispute that plaintiff at no time was licensed as a real estate broker. Based upon this statute, and the broad reading it has received, the trial court felt compelled to grant defendants' motion. In the course of its opinion, the trial court noted that it was "sympathetic to Plaintiff's plight, and ha[d] no reason to doubt that Plaintiff acted with utmost good faith and honesty in carrying out its [sic] agreement with Defendants."

I
A motion to dismiss pursuant to R. 4:6-2(e) for failure to state a claim should be granted "in only the rarest of instances." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 772, 563 A.2d 31 (1989). Such a motion may only be granted, moreover, after according the complaint a "meticulous and indulgent examination." Ibid. "[The] inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint" to ascertain whether a cause of action may be gleaned. Id. at 746, 563 A.2d 31. That examination, however, should be conducted "in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim." Ibid. (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J.Super. 244, 252, 128 A.2d 281 (App. Div.1957)). Faced with a motion to dismiss for failure to state a claim, "[a] court's review of a complaint is to be `undertaken with a generous and hospitable approach.'" NCP Litigation Trust v. KPMG LLP, 187 N.J. 353, 365, 901 A.2d 871 (2006) (quoting Printing Mart-Morristown, supra, 116 N.J. at 746, 563 A.2d 31).

*144 II
The basic policy underlying the Real Estate Brokers and Salesman Act, N.J.S.A. 45:15-1 to -42, is to protect consumers by excluding "undesirable, unscrupulous and dishonest persons . . . from the real estate business." Statement to Assembly Bill 143 (1921). Tobias v. Comco/America, Inc., 96 N.J. 173, 180, 475 A.2d 40 (1984) ("The basic policy of the real estate license act is to protect consumers. . . ."); Kazmer-Standish Consultants, Inc. v. Schoeffel Instruments Corp., 89 N.J. 286, 290, 445 A.2d 1149 (1982) ("The purpose of that act is to protect consumers. . . ."); Markeim-Chalmers, Inc. v. Masco Corp., 322 N.J.Super. 452, 457, 731 A.2d 114 (App.Div.1999) ("The primary objective of that Act is to protect consumers. . . ."). It is intended to protect against "fraud, misrepresentation, incompetence and sharp practice." Stahl v. Twp. of Teaneck, 162 F.Supp. 661, 669 (D.N.J.1958); Atl. Commercial Group, Inc. v. Dunham, 303 N.J.Super. 122, 129, 696 A.2d 85 (App.Div.1997).
When the statute was originally enacted, it did not include the language barring an unlicensed broker from bringing suit to collect a fee or commission. That provision was added by L. 1953, c. 229, § 2. Even before the addition of that specific language in 1953, however, it had been declared to be "[t]he public policy of this State . . . not to lend unlicensed brokers the aid of the courts to enforce their brokerage agreements." Solomon v. Goldberg, 11 N.J.Super. 69, 75, 78 A.2d 118 (App.Div.1950).
The statute, moreover, has been consistently interpreted in a broad manner when considering whether the activities in question can fairly be deemed to be the activities of a broker. Corson v. Keane, 4 N.J. 221, 72 A.2d 314 (1950), is illustrative. The plaintiff was a professional engineer who had been retained by the defendant to render engineering services in connection with the construction of a motel. Id. at 223-24, 72 A.2d 314. In the course of his assignment, the plaintiff struck a deal with the defendant under which it was agreed that the plaintiff would be paid five hundred dollars if he put the defendant in touch with a party or broker who could get the defendant additional financing for the project. Id. at 224, 72 A.2d 314.
Pursuant to this agreement, the plaintiff contacted various individuals and arranged a meeting between these individuals and the defendant that ultimately resulted in defendant obtaining a loan, secured by a mortgage. Ibid. The plaintiff did not attend any of the meetings between the parties to the mortgage transaction and did not participate in the mortgage. Ibid. When the defendant did not pay him the agreed-upon sum, the plaintiff commenced suit, contending that he had not acted as a broker because he had not negotiated any part of the transaction but merely put the defendant in a position in which he might negotiate on his own behalf. Ibid.
The Supreme Court rejected such a view. It held that a real estate broker is a special agent of the one who employed him and whose authority is circumscribed by the terms of his agreement. Id. at 225, 72 A.2d 314. "His employment contract may require much or little activity upon his part. He may, by the terms of his employment, be required to effect a sale or merely produce a customer." Ibid.
The essential feature of a broker's employment is to bring the parties together in an amicable frame of mind, with an attitude toward each other and toward the transaction in hand which permits their working out the terms of their agreement. They may reach that agreement, without his aid or interference.

*145 . . . .
A broker "negotiates" just as much when he brings parties together in such frame of mind that they can by themselves evolve a plan of procedure, as when he himself carries on the discussion and personally induces an agreement to accept a specific provision.
[Id. at 225-26, 72 A.2d 314 (quoting Baird v. Krancer, 138 Misc. 360, 246 N.Y.S. 85, 88 (Sup.Ct.1930)).]
We thus reject so much of plaintiff's argument that contends that the nature of the services he was engaged to provide do not fall within the literal scope of the statute. It matters not that plaintiff enjoyed what he characterizes as a "unique" relationship with Mrs. Helmsley. The singularity of that relationship does not serve to remove his actions from what are traditionally deemed the activities of a broker; rather, it facilitated his "bring[ing] the parties together in an amicable frame of mind." Corson, supra, 4 N.J. at 225, 72 A.2d 314.

III
We are satisfied, however, that such a determination does not end the inquiry in the context of this situation. Several factors inform our analysis.
It cannot escape our notice that Bovino is both an experienced real estate developer and is familiar with litigation. Coventry Square, Inc. v. Westwood Zoning Bd. of Adjustment, 138 N.J. 285, 650 A.2d 340 (1994); Fraser v. Bovino, 317 N.J.Super. 23, 721 A.2d 20 (App.Div.1998), certif. denied, 160 N.J. 476, 734 A.2d 791 (1999). Indeed, it was that very experience in real estate development that enabled Bovino to complete the transaction with the Helmsley Organization and be named the designated redeveloper by the Borough of Fort Lee. Plaintiff, on the other hand, had no such background.
It also cannot escape our notice that Bovino was familiar with the requirements of the real estate broker statute, a fact which is demonstrated by this court's opinion in Fraser v. Bovino, supra. That appeal was one stage in Bovino's protracted litigation opposing a proposed real estate project to be developed on land he himself unsuccessfully tried to buy. We set forth the history to that litigation, which spanned at least seven years, in our opinion. Fraser v. Bovino, supra, 317 N.J.Super. at 29-33, 721 A.2d 20. The proposed project was significantly delayed as a result of Bovino's challenges, and at one point, Fraser, who served as a broker in the transaction, sued Bovino, alleging that his opposition constituted tortious interference with the prospective economic advantage Fraser would realize through his commission. Id. at 30, 721 A.2d 20. Bovino, however, learned that despite the statement to the contrary in his complaint, Fraser was not a licensed real estate broker at the time the contract was executed. Id. at 31, 721 A.2d 20. Bovino moved for summary judgment, contending that the suit was barred by N.J.S.A. 45:15-3, and the trial court granted his motion; we affirmed, and the Supreme Court denied Fraser's petition for certification. Ibid. Thus, years before plaintiff's initial meeting with Bovino and Vaughn, in which Bovino offered to pay plaintiff for his efforts on Bovino's behalf, Bovino had successfully invoked N.J.S.A. 45:15-3 to defeat a claim for commissions.
Further, according to a letter plaintiff wrote to James Bovino in March 2003, a copy of which was appended to the complaint, the parties discussed in their initial meeting that plaintiff was not a broker. According to that letter, Bovino used that fact to offer plaintiff a commission of three *146 percent of the purchase price, instead of a higher percentage.
We noted earlier that the trial court was presented with the issue in the context of a motion to dismiss for failure to state a claim. As a result, the record contained no information as to the course of the negotiations with the Helmsley Organization once Bovino had achieved entrée. We do not know, by way of example, whether other entities were also attempting to purchase the Helmsley tract. That would hardly be unexpected in light of the parcel's size and significance. Nor do we know whether Bovino, anticipating that plaintiff would not be able to press a claim for commissions, was, as a consequence, able to offer a higher purchase price and beat out competitors. If the purpose of the statute is to protect the public against unscrupulous and dishonest persons, we are uncertain as to how that purpose would be furthered by dismissing plaintiff's claim if it develops that Bovino intended to rely upon the statute from the outset. See Tobias v. Comco/America, Inc., supra, 96 N.J. at 182, 475 A.2d 40, in which the Supreme Court declined to permit plaintiffs, who were "sophisticated businessmen [and] experienced in real estate transactions," to "convert the statute from a shield to protect the public into a sword."
The trial court rejected plaintiff's argument that Bovino should be estopped from relying upon N.J.S.A. 45:15-3, noting that estoppel cannot render valid an agreement that is void because it is against public policy or prohibited by law. The trial court cited Montgomery v. Wilmerding, 26 N.J.Super. 214, 97 A.2d 745 (Ch.Div.1953), as an example of this principle. Although Montgomery may illustrate the principle, we do not believe it controls the present situation. Montgomery presented what the Supreme Court subsequently referred to as a "most unusual" situation, in which a wife and her father were buying a divorce from her husband. Hudson v. Hudson, 36 N.J. 549, 557, 178 A.2d 202 (1962). When the agreed-upon payments ceased on the death of the father, the former husband sued the estate of the father, seeking to enforce the agreement. Montgomery, supra, 26 N.J.Super. at 217, 97 A.2d 745. The chancery judge, noting that the object of the contract was the divorce of the parties, considered it illegal and void. Id. at 219, 97 A.2d 745. He thus properly rejected the former husband's suit. Id. at 220, 97 A.2d 745.
We do not consider Montgomery either controlling or persuasive in the present situation. In our judgment, Joe D'Egidio Landscaping v. Apicella, 337 N.J.Super. 252, 766 A.2d 1164 (App.Div.2001) represents a better approach, at least at this early stage of litigation. In that case, we held that a party who by his own conduct induced a violation of N.J.A.C. 13:45A-16.2(12), requiring all home improvement contracts to be in writing, could not later invoke the regulation to defeat a claim for payment. Id. at 257, 766 A.2d 1164. In reaching that conclusion we said that "one who induces the alleged wrongdoing should not benefit as a result of it." Ibid.
We stress the limited nature of our holding. We have not determined that plaintiff is entitled to prevail. We have only concluded that he is at this point entitled to continue to assert his claim. It may well be that he will be unable to establish sufficient facts to prove his claim. At this juncture, we decline to deprive him of the opportunity to try to do so.
Reversed and remanded for further proceedings. We do not retain jurisdiction.