280 N.J. Super. 154 (1995)
654 A.2d 1017
MONIQUE BAUREIS, PLAINTIFF-RESPONDENT,
v.
THE SUMMIT TRUST COMPANY, DEFENDANT-APPELLANT AND THIRD-PARTY PLAINTIFF,
v.
THE ESTATE OF GEORGE BAUREIS, HERBERT G. ZARROW, WALTER BAUREIS AND WILLIAM J. BEYER, III, IN THEIR CAPACITIES AS EXECUTORS OF THE ESTATE OF GEORGE BAUREIS, BAUREIS INVESTMENT ASSOCIATES F/K/A BAUREIS INVESTMENTS, L.P., HERBERT ZARROW, IN HIS INDIVIDUAL CAPACITY, ZARROW, ZARROW & KLEIN, DONALD BAUREIS, DAVID BAUREIS, STEPHEN BAUREIS, AND JOHN DOES 1 THROUGH 10, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 12, 1994.
Decided March 14, 1995.
*155 Before Judges DREIER, VILLANUEVA and WEFING.
Steven S. Radin argued the cause for appellant The Summit Trust Company (Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, attorneys; Mr. Radin, of counsel; Mark E. Duckstein and Patricia B. Fugee, on the brief).
Helen Davis Chaitman argued the cause for appellee (Ross & Hardies, attorneys; Ms. Chaitman, of counsel; Laurence J. Bravman and Kelly J. Bugle, on the brief).
The opinion of the court was delivered by WEFING, J.A.D.
After carefully considering the record in this matter and the parties' arguments, we conclude the trial court erred when it denied the motion of defendant The Summit Trust Company (Summit) to dismiss plaintiff's complaint against it for failure to comply with the entire controversy doctrine. We reverse and remand the matter with directions to dismiss the complaint.

*156 I.
The issue arises in the following factual context. Plaintiff Monique Baureis (Monique) married George Baureis (George) on June 8, 1968. George had been married previously and had three children from that marriage. George was a man of significant wealth and, at the times relevant to the claims presented here, was a member of Summit's Board of Directors.
On August 2, 1988, George and Monique met with Adria Kelley, an assistant vice president and trust officer of Summit, to open a joint investment review account in both their names. According to Monique, George wished to make her a gift to express his gratitude for her devotion and care in nursing him back to health from a recent illness. He directed Summit to fund this account on August 3, 1988, Monique's birthday, by transferring five million dollars into the account from other accounts George maintained.
In February 1990, George's accountant called Summit, told it the joint account had been opened in error and to return the funds to Baureis Investments, L.P., their original source. Rondi Nelson, the assistant vice president and trust officer with whom George's accountant spoke, contacted George and received oral confirmation of the directive. She did not, however, contact Monique. Based on the oral instructions, she directed the investment review account be changed from a joint account in the name of George and Monique Baureis into one in the name of Baureis Investments, L.P. Although the record is not clear when Monique learned of the change, she knew of it at least by the spring of 1991.
The marital relationship between Monique and George, unfortunately, did not endure. In August 1991, Monique filed a complaint for divorce. She included, within that complaint, reference to the closure of the joint account. George died on May 8, 1992, before the divorce proceedings concluded. As a result, Monique was unable to continue a claim for equitable distribution or assert a claim for an elective share under N.J.S.A. 3B:8-1. She then filed an amended complaint against George's estate in which she sought *157 to impose a constructive trust under Carr v. Carr, 120 N.J. 336, 576 A.2d 872 (1990).
That litigation eventually was resolved. In February 1994, the parties executed a forty-page settlement agreement under which Monique received $9,000,000 to resolve her claims against George's estate, including her claim to the closed joint account.
In December 1993, while Monique's amended matrimonial complaint remained outstanding, she filed this complaint against Summit in which she sought damages for Summit's actions in closing the joint account. She asserted counts for breach of contract, conversion and negligence. The complaint, which made no mention of the divorce action, included the following certification by Monique's attorney:
I hereby certify that no other lawsuit or arbitration proceeding has been commenced relating to the subject matter of this action, nor are any other suits or proceedings contemplated. I further certify that there are no other parties who should be joined at this time.
Summit, served with this complaint on February 4, 1994, knew Monique and George had been involved in divorce litigation. Indeed, Rondi Nelson had been deposed about the joint account's closure as part of discovery in that matter. Monique also subpoenaed Hilton Jervey, a senior vice president and senior investment officer at Summit for his deposition on the issue, but the deposition was never held.
We are informed Summit's attorneys, in connection with their preparation of Summit's answer to this complaint, contacted the attorney handling the divorce litigation to inquire of its status; they were told it remained open. Summit's attorneys later went to review the court's files in the divorce litigation and learned it had since been resolved and the complaint dismissed.
Summit then filed a motion to dismiss this complaint, urging that Monique should have joined any claim against Summit, for its handling of the joint account, with her claims against George, and later his estate, in the matrimonial litigation. The trial court denied Summit's motion. Summit then filed an answer and a *158 third-party complaint against George's estate, its executors and beneficiaries, the limited partnership to which the joint funds had been transferred and George's accountants. Summit also filed a motion with this court for leave to appeal, which we granted.

II.
This case, once again, calls upon us to explore the parameters and scope of the entire controversy doctrine, a principle to which New Jersey has been firmly committed for many years.
"Under this doctrine, the `entire controversy' rather than its constituent causes of action, is the unit of litigation and joinder of all such causes of action is compulsory under penalty of forfeiture.... A defendant must assert all matters which will defeat a claim against him, and a plaintiff must seek complete relief for vindication of the wrong he charges."
[The Malaker Corp. v. First Jersey National Bank, 163 N.J. Super. 463, 496[, 395 A.2d 222] (App.Div. 1978), certif. denied 79 N.J. 488[, 401 A.2d 243] (1979).]
It is easier, however, to state the rule than it is to apply it.
[t]he task of definitionally circumscribing the outer limits of a given controversy for purposes of application of the doctrine is inordinately difficult. Cf. Silverstein v. Abco Vending Service, supra, 37 N.J. Super. [439,] at 449[, 117 A.2d 527]. As a practical matter, the doctrine cannot be dealt with on an a priori basis. It must be applied empirically. That is to say, an evaluation must be made of each potential component of a particular controversy to determine the likely consequences of the omission of that component from the action and its reservation for litigation another day. If those consequences are likely to mean that the litigants in the action as framed will, after final judgment therein is entered, be likely to have to engage in additional litigation in order to conclusively dispose of their respective bundles of rights and liabilities which derive from a single transaction or related series of transactions, then the omitted component must be regarded as constituting an element of the minimum mandatory unit of litigation. That result must obtain whether or not that component constitutes either an independent cause of action by technical common-law definition or an independent claim which, in the abstract, is separately adjudicable.
[Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 293-94[, 375 A.2d 675] (App.Div. 1977), certif. denied 75 N.J. 528, 384 A.2d 507 (1977).]
The doctrine is "an integral and component part of this state's approach to the resolution of disputes or controversies ..." Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 350, 476 A.2d 250 (1984) (Handler, J. concurring) and is now as fully applicable to parties as to claims. Cogdell v. Hospital Center at Orange, 116 N.J. 7, *159 560 A.2d 1169 (1989); R. 4:30A. The need to analyze the doctrine's scope and applicability has provided much grist for judicial mills. See, e.g., the cases collected in DiTrolio v. Antiles, 276 N.J. Super. 234, 647 A.2d 1318 (App.Div. 1994) at 246-47, in which the court, Michels, J. dissenting, declined to invoke the entire controversy doctrine to bar that plaintiff's claim. See also the later cases of Stebbins v. Robbins, 278 N.J. Super. 439, 651 A.2d 486 (App.Div. 1995); Prevratil v. Mohr, 279 N.J. Super. 652, 653 A.2d 1190 (App.Div. 1995); and Transit Rail v. Cleaning Services, 277 N.J. Super. 367, 649 A.2d 908 (Law Div. 1994).
Plaintiff contended, and the trial court agreed, that the entire controversy doctrine was not applicable since Monique's claims against Summit were not "unique to and (did not) ... arise out of a family or a family-type relationship." R. 5:1-2. We disagree.
Monique's claims against Summit were inextricably intertwined with her claims against George. If, for example, George had not died and the divorce matter concluded in a trial and a judicial determination of no liability for George's actions, Monique could hardly have sought to re-litigate that very issue against Summit in a subsequent proceeding. We see no reason why Monique, having resolved her claim against George's estate, should be allowed another attempt to litigate a nearly identical claim, based upon the same underlying facts, in a separate proceeding against another defendant.
This court has recently recognized:
that the entire controversy doctrine is not to be applied automatically to preclude a subsequent suit simply because claims between identical parties not pleaded in an earlier action were raised in a subsequent suit or because the defendants in the later suit had some interest in the issues raised in the prior action. Rather, in common with other discretionary standards, a particularized evaluation is required to determine whether the policies sought to be fostered by the doctrine require its application as a preclusive principle when balanced against a litigant's right to tailor separate causes of action in ways that do not impose substantial unfairness upon other parties, unreasonably fragment litigation, or negate the fair demands of judicial economy or efficiency.
[DiTrolio v. Antiles, 276 N.J. Super. at 247-8, 647 A.2d 1318.]
*160 In this matter, we are satisfied such a "particularized evaluation" leads to the conclusion that permitting this action to proceed poses a risk of "substantial unfairness" to Summit, unreasonably fragments litigation of the same issues and poses an unfair burden on judicial economy.
We find several elements of unfairness in this matter. As noted earlier in this opinion, Monique was aware, even before filing her divorce complaint, that the joint account no longer existed. She consulted with counsel and the bank about this issue. Indeed, while the matrimonial litigation remained unresolved, the attorney representing Monique in the matrimonial litigation wrote to the attorney then representing Summit and suggested a meeting with the parties and counsel to resolve Monique's claim against Summit. Monique was thus fully aware of the claim's existence, yet did not formally assert it. She withheld the claim, resolved her disputes with George's estate and commenced this action, premised upon the exact factual complex presented in the earlier suit.
We cannot close our eyes, moreover, to the impact upon Summit of George's death in the interim. While that is hardly attributable to plaintiff, it severely prejudices Summit in attempting to defend itself against Monique's assertions.
Additionally, as Summit properly notes, if it had been joined in the prior matrimonial action, it could have asserted cross-claims or third-party claims against the parties who received the funds transferred from the joint account. While it asserts such claims here, its tactical position against Monique in this litigation has been undeniably weakened, as discussed infra.
Summit also could have sought an interim stay on the transfer or distribution of funds to assure the funds remained available if restoration of the joint account were ordered. By the time Monique began this suit against Summit, the assets of Baureis Investments, L.P., had been severely depleted, thus reducing Summit's possibilities of limiting any damages assessed against it.
*161 Finally, we note certain terms in the settlement agreement between Monique and George's estate, in particular, Article IV. Within that article, the parties acknowledged Monique intended "to pursue a claim against Summit" for the account transfer and the estate assigned to her any claims it had against Summit relating to the transfer.
Monique agreed, within that article, that if Summit asserted a claim against the estate with respect to this account, Monique would pay its "reasonable legal fees" and would indemnify it, the executors, the beneficiaries and trustees as well as their accountants and hold them harmless from any damages for any claim made by Summit in connection with the account. As Summit notes, absent that indemnification provision, it would have been in each parties' interests to establish that George was never entitled to make the initial transfer into the joint account in the first place, and thus Monique could never have had a claim to that money. As a result of Article IV of the settlement agreement, however, those parties have no interest in seeking to establish that proposition. In Summit's words, they have been effectively "neutralized" in this litigation by those provisions.
We think it apparent, upon review, that Monique, for reasons of her own litigation strategy (and because the attorney who represented her in the matrimonial action was ethically precluded from filing suit against Summit) deliberately withheld her claim against Summit and did not assert it in the matrimonial action. We view this as an unreasonable fragmentation of her litigation claims.
Additionally, we can perceive no reason in logic or policy to conclude the entire controversy doctrine is not applicable to proceedings in the Family Part of the Chancery Division of the Superior Court. Certainly, our Court Rules contain no indication of such a limitation.
There is one Superior Court in New Jersey with "original general jurisdiction throughout the State in all causes." N.J. Const. Art. 6, § 3, paragraph 2. The Chancery Division, Family *162 Part, clearly had jurisdiction over Monique's claim against Summit.
Contrary to plaintiff's argument, and the trial court's holding, Monique could have asserted her claim against Summit within her matrimonial action. Under R. 4:3-1(a)(3) the Chancery Division, Family Part, is the proper venue for "civil actions in which the principal claim is unique to and arises out of a family or family-type relationship." That language is echoed in R. 5:1-2(a).
As noted earlier, Monique's claim against Summit is, in our view, inextricably related to her claim against George; that the claim is asserted against a non-family member does not preclude its disposition in the Family Part. Thus, in Anzalone v. Anzalone Brothers, Inc., 185 N.J. Super. 481, 449 A.2d 1310 (App.Div. 1982) this court held that Anzalone Brothers, Inc. was a proper party to be joined in an action for divorce, child custody, support and equitable distribution when the plaintiff alleged her then-husband had fraudulently conveyed assets to the corporation to avoid equitable distribution of marital assets. We noted "the corporate defendant (was) properly joined in connection with the demand to set aside an alleged fraudulent conveyance and is a party to the action based upon equity rather than matrimonial principles." Anzalone, 185 N.J. Super. at 488, 449 A.2d 1310. Here, Monique could have joined Summit in connection with her claim that Summit improperly closed this joint account and Summit would have been a proper party to the action based upon general equitable principles. While Anzalone v. Anzalone Brothers, Inc., supra, may have been decided prior to the 1983 creation of the Chancery Division, Family Part, that does nothing to weaken its applicability in this case.
We note, moreover, that a decision that Monique was obligated to assert her claim against Summit within the matrimonial action would not require the claim be tried within the matrimonial action if it were not otherwise resolved. The Chancery Division, Family Part, at any point it considered appropriate, could have severed *163 Monique's claim against Summit and transferred it for trial. R. 4:3-1(b); R. 4:38-2.
We are not persuaded by plaintiff's argument that applying the entire controversy doctrine in a matrimonial context will result in clogging the Family Part with third-party litigation. Indeed, plaintiff suggests that contested issues of equitable distribution will require impleading the plumber to handle a contested bill. We do not agree.
In order for the right to assert claims to be transmuted into a requirement that they be asserted simultaneously, an unavoidably contingent relationship between the separate causes of action must exist to the extent, either, that a full and just result cannot be achieved in one suit without simultaneous consideration of the issues raised in the other, or the demands of fairness in consideration of all parties requires that the matters be addressed together, or the needs of judicial economy in avoiding truly duplicative efforts dictate such a result. The test to be applied goes beyond a shared involvement in the underlying facts to require an objectively ascertainable practical commonality between the legal issues as well.
[DiTrolio v. Antiles, supra, 276 N.J. Super. at 251, 647 A.2d 1318.]
The Supreme Court recognized in Cogdell v. Hospital Center at Orange, supra, that the "mandatory joinder (of parties) rule ... is not unbounded." Cogdell, 116 N.J. at 27, 560 A.2d 1169. That recognition is entirely in line with its earlier view that "the entire controversy doctrine does not demand monolithic adjudications." Crispin v. Volkswagenwerk A.G., supra, 96 N.J. at 354-55, 476 A.2d 250.
Our courts are vested with the judgment and discretion to recognize unrelated claims against non-parties which do not need to be joined "in order to conclusively dispose of ... (the parties') respective bundles of rights and liabilities which derive from a single transaction or related series of transactions ..." Busch v. Biggs, 264 N.J. Super. 385, 398, 624 A.2d 1017 (App.Div. 1993) [quoting Zaromb v. Borucka, 166 N.J. Super. 22, 26-27, 398 A.2d 1308 (App.Div. 1979).]
Finally, we are entirely unpersuaded by plaintiff's contention, and the trial court's suggestion, that Summit is not entitled to invoke the entire controversy doctrine since it failed to intervene in the matrimonial action. We are aware of no principle which *164 would require a party to intervene in a pending lawsuit in order to prevent later litigation against it. We consider Summit fully justified in not subjecting itself to litigation when Monique, at that point, had taken no steps to do so. Summit's failure to move to intervene in the earlier matrimonial litigation was, in no sense, a waiver of Summit's rights to the protection afforded it by the entire controversy doctrine.

III.
Since we are satisfied plaintiff's complaint should be dismissed for failure to comply with the entire controversy doctrine, we do not find it necessary to address defendant's second contention, that her complaint should be dismissed for failure to comply with R. 4:5-1. Summit contends the failure of Monique's attorney to refer to the then-pending divorce action in her certification under R. 4:5-1 warrants dismissal of the action. We consider that argument moot in light of our disposition of the first contention.
Reversed.