**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1384-14T3

DIRECT COAST TO COAST, LLC
and SELECTIVE TRANSPORTATION
CORPORATION,

     Plaintiffs-Appellants/
     Cross-Respondents,

v.

JOSEPH PETERSON, individually and
as an agent of THE BANFIELD GROUP,
LLC,

     Defendant-Respondent/
     Cross-Appellant,

and

LISA MARIE HARRISON, individually
and as an agent of THE BANFIELD
GROUP, LLC and JERRY KETEL,
individually and as an agent of
THE BANFIELD GROUP, LLC,

     Defendants.

_____

        Argued December 21, 2016

        Before Judges Alvarez, Higbee and Manahan.

        Telephonically reargued February 28, 2017 —
        Decided May 22, 2017

Before Judges Alvarez, Accurso and Manahan.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6322-12.

Ronald Horowitz argued the cause for appellant/cross-respondent.

Craig Rothenberg argued the cause for respondent/cross-appellant.

PER CURIAM

Plaintiffs Direct Coast To Coast, LLC and Selective Transportation Corporation appeal from a summary judgment dismissing their complaint against defendant Joseph Peterson, as well as orders denying their motions for reconsideration and for counsel fees and costs as a condition of vacating a prior default against Peterson and for obtaining the dismissal of his counterclaims with prejudice. Defendant cross-appeals from the denial of his motion to impose fees and costs on plaintiffs and their counsel for pursuing frivolous litigation and violating the rules of professional conduct. We affirm each of the orders.

The essential facts are undisputed. Plaintiffs are affiliated freight transportation companies located in New Jersey. The Banfield Group, LLC was a freight transportation broker located in Oregon with which plaintiffs did business for several years.

2                                                      A-1384-14T3

Defendant owned a majority interest in Banfield until the end of 2008 when he entered into an agreement conveying his interest to the company and a remaining member, who continued to operate the business. The purchase price was payable over several years, coinciding with a part-time employment agreement for defendant, and defendant was provided a security interest in Banfield's tangible and intangible assets. As part of the transaction, Banfield and the remaining member agreed to defend, indemnify and hold defendant harmless from any damages arising out of the ownership or operation of the company going forward. Defendant's security interest was evidenced by a UCC Financing Statement filed with the State of Oregon. Defendant was apparently Banfield's only secured creditor.

In 2009, Banfield began to fall behind in its payments to plaintiffs for freight services. In January 2010, plaintiffs sent demand notices to Banfield. Direct's notice advised if payment of the full amount of $128,733.03 owed was not received within five business days, Direct would eliminate the minimum rates and discounts accorded Banfield and seek "full bureau rates" for a total of $468,238.71. Selective sent a similar notice advising if Banfield failed to pay the $17,872.96 it owed, Selective would seek payment of $104,732.48. The statements of account attached to those notices provided that

the balances owed were incurred by Banfield in late 2009, months after defendant sold his interest in the company.

In addition to not paying plaintiffs, Banfield also stopped paying defendant. In late January 2010, Banfield surrendered its assets to defendant, acknowledging he had "a first position perfected security interest in all of the tangible and intangible assets" of the company. In March 2010, defendant's lawyer wrote to Banfield's creditors, including plaintiffs, advising that defendant sold his interest in Banfield in December 2008, had "a first perfected security interest in all of the assets" of the company, and that following default by Banfield, its assets were surrendered to him in lieu of foreclosure. The letter also advised that the value of the remaining assets was significantly less than the sums owed defendant.

Following Banfield's demise, plaintiffs continued to do business in 2010 and 2011 with defendant, through Auburn Logistics, a company owned by defendant's brother. In early 2011, after learning that plaintiffs' counsel was attempting to collect on Banfield's debts, defendant wrote to him twice. Defendant advised plaintiffs' counsel of the sale of defendant's interest in Banfield, and that Auburn had no responsibility for Banfield's debts. In response, plaintiffs' counsel wrote to

defendant at Auburn, advising if payment of $475,851.73 was not received within ten days, "suit will be instituted in New Jersey against you, your company and The Banfield Group, together with all shippers and consignees."

Plaintiffs thereafter instituted separate suits in the Law Division in Middlesex County against Banfield, Auburn and a number of Banfield's consignees and shippers seeking the non-discounted balances plaintiffs claimed were due from Banfield. Plaintiffs sued Auburn on a theory of successor liability. Although having threatened to sue defendant, plaintiffs did not name him in those actions, despite their knowledge of his role in Banfield and Auburn and did not identify him in their Rule 4:5-1 disclosures. Instead, they took defaults against Banfield and Auburn for the non-discounted amounts plaintiffs claimed Banfield owed and settled with several consignees and shippers, recovering $67,000.

Plaintiffs concede they received additional information in the course of discovery in the 2011 suits that defendant allegedly diverted payments received from Banfield customers, for services rendered by plaintiffs, to himself and withdrew "substantial funds" from Banfield's bank accounts in 2010. Notwithstanding, plaintiffs never sought to join defendant in those actions or amend their Rule 4:5-1 disclosures to identify

defendant as a person potentially liable to them on the basis of those facts.

After the 2011 litigation ended, plaintiffs filed this action in the Law Division against defendant "individually and as an agent of The Banfield Group, LLC" to recover the default judgments secured in the 2011 suits, less the sums recovered from Banfield's customers in those actions. Plaintiffs obtained a default judgment against defendant in January 2013 for $515,779.21.

Defendant moved to vacate the default, claiming he had not been served. Specifically, defendant claimed no one was present at his Oregon home when he was allegedly served, as he and his wife, the only two members of their household, were in California celebrating a family birthday on the alleged date of service. Following a plenary hearing at which both defendant and the process server testified, the court concluded defendant had not been served and vacated the default judgment.

Defendant filed an answer and counterclaim, and discovery ensued with each side accusing the other of failing to produce discovery. Defendant eventually moved for summary judgment arguing the entire controversy doctrine barred plaintiffs' claims against him, that the complaint was filed beyond the eighteen-month statute of limitations imposed on interstate

motor carriers seeking to recover charges for transportation or services by 49 U.S.C. § 14705(a), that defendant did not owe plaintiffs fiduciary duties as a matter of law and that he should be awarded his counsel fees and costs as a sanction for the bad faith of plaintiffs and their lawyer in pursuing the action.

In a comprehensive written opinion, Judge Paley found plaintiffs' failure to join defendant in the first of these successive actions was inexcusable and caused defendant substantial prejudice. See Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 242 (App. Div.), certif. denied, 175 N.J. 170 (2002). Specifically, the judge found on the undisputed facts that plaintiffs were aware of defendant's affiliation with Banfield since at least 2010, as reflected in their demand letters, and had even threatened to sue defendant before instituting the 2011 suits. The judge further found that plaintiffs were aware in 2011 that defendant had taken a security interest in all of Banfield's assets when he sold his interest in the company in late 2008.

The court concluded that by holding back their claim against defendant under those circumstances and suing him only after recovering a default judgment against Banfield, plaintiffs were seeking to deprive him of any meaningful opportunity to

challenge the amount of the judgments and thus to capitalize on their failure to exclude him from the prior lawsuits.  See Baureis v. Summit Trust Co., 280 N.J. Super. 154, 160 (App. Div.), certif. denied, 141 N.J. 99 (1995) (concluding particularized evaluation of successive action revealed risk of substantial unfairness to the defendant, unreasonably fragmented litigation of the same issues and posed an unfair burden on judicial economy).  The judge further found that intervening events, notably the remaining member's personal bankruptcy, "substantially prejudiced" defendant by depriving him of the ability to obtain the benefit of his contractual indemnification.

Judge Paley also concluded plaintiffs' claims were time-barred because plaintiffs filed their complaint in September 2012, thirty-three months after the last services were provided. The judge concluded the Interstate Commerce Commission Termination Act of 1995 (ICCTA), 49 U.S.C. § 13501, barred the claims because plaintiffs were attempting to recover for unpaid freight charges notwithstanding that plaintiffs styled them as constituting a breach of fiduciary duty.  See 49 U.S.C. § 14705(a) ("A carrier providing transportation or service subject to jurisdiction under chapter 135 must begin a civil action to recover charges for transportation or service provided by the

carrier within 18 months after the claim accrues."); Emmert Indus. Corp. v. Artisan Assocs., Inc., 497 F.3d 982, 987, 989-90 (9th Cir. 2007) (holding the statute's plain language requires a carrier to bring its claims to recover for transportation or service within eighteen months of accrual and "necessarily preempts" state law providing for a longer period of limitation).

Finally, the judge found defendant did not owe any fiduciary duties to plaintiffs because defendant was not under any "duty to act for or give advice for the benefit of plaintiffs on matters within the scope of their relationship." See McKelvey v. Pierce, 173 N.J. 26, 57 (2002). Defendant was not a director or officer at the time the debts accrued and only retook control of Banfield's assets after the debts were accrued pursuant to his perfected security interest. The judge found plaintiffs had thus "failed to demonstrate the existence of any fiduciary interest flowing to them."

Plaintiffs appeal, contending the court erred by holding the action barred by the entire controversy doctrine, that 49 U.S.C. § 14705 "does not apply to bar any of the claims by plaintiff, Direct, and only some of the claims by plaintiff, Selective," that as a "corporate principal, defendant owed a duty to bona fide creditors not to misappropriate corporate

funds and, as a broker, not to comingle trust funds," that they were entitled to their counsel fees and costs and that the case was not ripe for summary judgment. We reject those arguments.

We review a grant of summary judgment using the same standard that governs the trial court. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). Thus, we consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp., Inc. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)). Applying that standard here, we find no reason to disturb Judge Paley's careful findings.

There is no dispute that plaintiffs were well aware of defendant's role in Banfield, the entity that accrued the debts, and Auburn, the entity plaintiffs sued in 2011 under a theory of successor liability, at the time of the first suits. They admit they threatened to sue defendant before instituting the 2011 litigation and confirmed in discovery facts they claim show defendant diverted funds paid to Banfield by consignees and took for himself funds in Banfield's bank account after assuming control of the company in 2010 pursuant to the surrender of assets. Plaintiffs' claims that defendant breached fiduciary

10

duties to them are inextricably interwoven with the claims they brought in the 2011 litigation against Banfield and its customers.

It is further undisputed that the original freight charges owed by Banfield to Direct totaled $121,389.38,[1] and that Direct obtained a default judgment against Banfield for $475,851.73, including "loss-of-discount and/or non-payment penalties . . . of $354,462.35, almost three times the actual amount of the alleged debt." Likewise, although Banfield only owed Selective $13,870.54, Selective obtained a default judgment against it for $95,521.10, including loss-of-discount and/or non-payment penalties of $81,650.56.

Although claiming they had no obligation to name defendant in the 2011 litigation, plaintiffs continue to assert that defendant is precluded from challenging the amount of the judgments against Banfield in this suit, presumably because of their contention that defendant was in privity with Banfield. See Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (noting for the doctrine of collateral estoppel to foreclose

---

[1] Plaintiffs admitted defendant's allegation in his statement of material facts in support of his motion for summary judgment that "[a]ccording to the spreadsheet attached to Direct's 2011 Complaint, the original amount owed is $121,389.38" not the $128,733.03 demanded before suit was filed.

relitigation of an issue, the party asserting the bar must show, among other things, that "the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding").  Accordingly, we find no error in the trial court's conclusion that this is precisely the sort of successive litigation the entire controversy was designed to prohibit.  See 700 Highway 33 L.L.C. v. Pollio, 421 N.J. Super. 231, 236-37 (App. Div. 2011) (holding once a court determines a Rule 4:5-1(b)(2) disclosure should have been made in the first of successive actions, it must decide whether the party's failure to make the disclosure was "inexcusable," and whether the undisclosed party's ability to defend the successive action has been substantially prejudiced).

Had plaintiffs joined defendant in the 2011 suits, defendant could have asserted his claim that plaintiffs were not authorized to assess penalties for late payment[2] against Banfield and asserted cross-claims or third-party claims for contractual indemnification, which the subsequent bankruptcy of the personal indemnitor made impossible in this action.  There appearing on

---

[2] Plaintiffs admitted that Direct sent several letters to Banfield between 2004 and 2007 agreeing to provide it "a 77% discount on any freight Direct picks up from The Banfield Group and is billed to the Banfield Group," none of which "contained any provisions authorizing Direct to assess Banfield penalties for late payment."

the undisputed facts no reason other than litigation strategy for plaintiffs to have held back their claims against defendant, we agree with Judge Paley that to permit this suit to go forward would impose substantial unfairness upon defendant and unreasonably fragment the litigation contrary to the fair demands of judicial economy. See Baureis, supra, 280 N.J. Super. at 159. Plaintiffs' claim that defendant was aware of the first action and thus should have intervened in order to protect his interest is without merit. See id. at 163-64 ("We are aware of no principle which would require a party to intervene in a pending lawsuit in order to prevent later litigation against it.").

Plaintiffs' argument that their claims are not barred by the statute of limitations because they "do not seek freight transportation charges from [defendant]," elevates form over substance and provides further support for the court's holding that the case is barred by the entire controversy doctrine because inextricably intertwined with the 2011 litigation. There can be no dispute that plaintiffs in this action seek to hold defendant responsible for the judgments entered against Banfield for freight transportation charges. Their argument that 49 U.S.C. § 14705 "does not apply to bar any of the claims by plaintiff, Direct, and only some of the claims by plaintiff,

Selective," is based on their claim that Direct did not act as a "motor carrier" and "many of Selective's shipments were intrastate."

Plaintiffs, however, contended in the 2011 litigation that both Selective and Direct were motor carriers and admitted the same in this suit in response to defendant's statement of undisputed material facts.[3] Although conceding that Selective is a motor carrier, plaintiffs assert "its transportation for Banfield was mostly in New Jersey" and thus the federal statute of limitations would not apply. In their reply brief, plaintiffs assert that "at bare minimum, both [p]laintiffs are entitled to over $11,000 of unpaid freight transportation charges," noting "[o]f course, these are [d]efendant's

_____

[3] In their reply brief, plaintiffs assert that although Direct is concededly a freight forwarder and a freight forwarder is a motor carrier under the ICCTA, "not all shipments tendered to a freight forwarder are actually transported by the freight forwarder (i.e. it is brokered to another motor carrier)." Plaintiffs thus insist that "Direct's pursuit of unpaid freight transportation charges from its customer Banfield, and against its customer's principal herein" as a freight forwarder are not inconsistent positions. We add the emphasis to note the inconsistency between this statement and plaintiffs' assertion that they are not seeking unpaid freight charges against Banfield. Plaintiffs have also not attempted to identify among the many hundreds of pages of invoices in the record which ones reflect Direct acting only as a "broker" or those that reflect charges for intrastate travel.

calculations based on the discounted basis and not the non-discounted basis which is permitted under federal law."

It bears emphasizing that plaintiffs have sued defendant on judgments totaling over $500,000, that they have insisted elsewhere in their papers that their claims are not for unpaid freight charges, that federal law does not control their cause of action against defendant and that this is not a successive action to those they failed to join defendant to in 2011. As plaintiffs concede that the federal statute of limitations bars at least part of their claim and have made no effort to quantify how much survives beyond asserting that "at bare minimum, both [p]laintiffs are entitled to over $11,000 of unpaid freight transportation charges," we cannot conclude on this record that the trial court erred in finding their claim barred by 49 U.S.C. § 14705. See State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977) (noting a court is not obligated to search the record to substantiate an argument advanced in an appellate brief).

Plaintiffs' claims that defendant "as a corporate principal owed a duty to bona fide creditors not to misappropriate corporate funds and, as a broker, not to comingle trust funds," ignores the undisputed evidence in the record that defendant sold his interest in Banfield at the end of 2008 and only retook control in 2010 pursuant to the agreement to surrender assets to

him as Banfield's only secured creditor. Plaintiffs have not cited any authority to suggest that a secured creditor in possession of a perfected security interest as defendant here owes a fiduciary duty to unsecured creditors such as plaintiffs. Accordingly, we need not consider the claim further. See Weiss v. Cedar Park Cemetery, 240 N.J. Super. 86, 102 (App. Div. 1990) (noting the failure to adequately brief an issue permits the court to treat it as waived).

Plaintiffs' claim for counsel fees and costs as a condition of vacating a prior default against Peterson and for obtaining the dismissal of his counterclaims with prejudice; and defendant's cross-appeal from the denial of his motion to impose fees and costs on plaintiffs and their counsel for pursuing frivolous litigation and violating the rules of professional conduct require only brief comment. It is well established that "fee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995).

The court vacated the default judgment entered against defendant here following a plenary hearing in which it determined defendant was never served. Accordingly, there was no basis for imposing on defendant the obligation of plaintiffs' fees as a condition of vacating the judgment under Rule 4:50-1.

See Reg'l Constr. Corp. v. Ray, 364 N.J. Super. 534, 543 (App. Div. 2003). As for securing the dismissal of defendant's counterclaims, Judge Paley declined to find the claims were frivolous or brought in bad faith. Defendant's claim for frivolous litigation sanctions is barred by the failure to observe the Rule's requirements. See Trocki Plastic Surgery Ctr. v. Bartkowski, 344 N.J. Super. 399, 406 (App. Div. 2001), certif. denied, 171 N.J. 338 (2002). In no event could we find Judge Paley abused his considerable discretion in declining to award either party fees on this record. See Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001).

The parties' remaining arguments, to the extent we have not addressed them, lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION