721 A.2d 20 (1998)
317 N.J. Super. 23
Robert FRASER, Realty Executives and James D. Franco, Plaintiffs-Appellants/Cross-Respondents,
v.
James J. BOVINO, Edward Arata, Coventry Square, Inc., a Corporation of the State of New Jersey, Steven Boswell and Boswell Engineering Co., Defendants-Respondents/Cross-Appellants, and
Michael F. Rehill, Esq., Williamson & Rehill, P.A., W. Thomas Watkinson, W. Thomas Watkinson, III, Engineering and planning, P.C., Nino D. Caridi, Esq., Michael DeMarrais, Esq., DeMarrais & Schandler, Esqs., Barry Sirota, Esq., Richard J. Allen, Esq., and Borough of Westwood, Defendants-Respondents, and
James J. BOVINO and Coventry Square, Inc., a Corporation of the State of New Jersey, Third-Party Plaintiffs,
v.
The TRAVELERS INSURANCE CO., successor to Aetna Casualty & Surety Co., Third-Party Defendants.
William P. GELNAW and Donald F. Gelnaw, Plaintiffs-Appellants,
v.
James J. BOVINO, Edward Arata, Coventry Square, Inc., a Corporation of the State of New Jersey, Steven Boswell and Boswell Engineering Co., Michael F. Rehill, Esq., Williamson & Rehill, P.A., W. Thomas Watkinson, W. Thomas Watkinson, III, Engineering and Planning, P.C., Richard J. Allen, Esq., Robert E. Martini, Esq., Martini & Lebow, Esqs., and Kevin G. Blessing, Esq., Defendants-Respondents, and
James J. BOVINO and Coventry Square, Inc., a Corporation of the State of New Jersey, Third-Party Plaintiffs,
v.
The TRAVELERS INSURANCE CO., successor to Aetna Casualty & Surety Co., Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1998.
Decided December 11, 1998.
*22 Edward G. O'Byrne, Totowa, for plaintiffs-appellants/cross-respondents Robert Fraser, Realty Executives, James D. Franco, William P. Gelnaw and Donald F. Glenaw.
Ronald J. Picinich, Hackensack, for defendants-respondents/cross-appellants James J. Bovino and Coventry Square, Inc. (Picinich & McClure, attorneys; Mr. Picinich, on the brief).
Peter J. Luizzi, Brick, for defendants-respondents Robert E. Martini and Martini & LeBow (LePore, Luizzi & Lepore, attorneys; Mr. Luizzi, on the brief).
Philip N. Boggia, Ridgefield Park, for defendants-respondents/cross-appellants Steven Boswell, Boswell Engineering Co. and Edward Arata (Durkin & Boggia, attorneys; Mr. Boggia, on the brief).
Michael F. Rehill, Woodcliff Lake, for defendants-respondents Michael F. Rehill and Williamson & Rehill, P.A. (Williamson & Rehill, attorneys; Mr. Rehill, on the brief).
Scott B. Piekarsky, Wayne, for defendant-respondent Richard J. Allen (De Yoe Heissenbuttel, attorneys; Mr. Piekarsky, on the brief).
Donna J. Macri, Montclair, for defendants-respondents Michael DeMarrais and DeMarrais & Schandler (Garrity, Graham, Favetta & Flinn, attorneys; Thomas D. Flinn, of counsel, Ms. Macri, on the brief).
Before Judges LONG, WEFING and CARCHMAN.
*21 The opinion of the court was delivered by WEFING, J.A.D.
These are consolidated appeals and cross-appeals, pursuant to leave granted, from orders entered by the trial court granting summary judgment to certain defendants and denying it to others. The matters share a complex, interwoven procedural and factual background that must be set forth at some length to understand fully the basis for our conclusions. As will be explained, we conclude that the trial court correctly granted summary judgment to those defendants who so moved but erred when it denied summary judgment to the cross-appellants.
*23 Two related complaints, which will be referred to for ease of understanding as the Fraser matter and the Gelnaw matter, were filed independently. The Fraser matter has been pursued through two separate complaints, Fraser I and Fraser II. Defendants in the each action are, for the most part, identical. Plaintiffs in the Gelnaw matter and Fraser II have the same attorney.

I.
William P. Gelnaw and Donald F. Gelnaw (Gelnaw) owned approximately 8.7 acres of land in Westwood, New Jersey. On October 6, 1989, Gelnaw signed a contract to sell the property to David B. Dinallo and Donald Palumbo for $5.5 million. The contract was contingent upon the purchasers obtaining all necessary approvals to construct at least 157 condominium units on the property. It called for a closing date no later than September 22, 1991, and provided for certain non-refundable interim payments on account. It identified Realty Executives (Realty) as the broker in the transaction, and Gelnaw acknowledged the existence of a separate agreement to pay Realty a commission. The individual in Realty's office who principally handled this transaction was Robert Fraser, a licensed real estate salesman.
Dinallo and Palumbo organized a limited partnership known as Westwood Associates (Associates) to implement this project. Associates originally contacted defendant Boswell Engineering Co. to assist in the preparation of the various engineering plans and drawings required to obtain municipal approval. Boswell Engineering Co. assigned defendants Steven Boswell and Edward Arata to this project. (Unless otherwise indicated within this opinion, "Boswell" shall encompass Boswell Engineering Co. and Messrs. Boswell and Arata.)
Defendant James J. Bovino (Bovino) is a real estate developer. He owned property adjacent to the Gelnaw land and had earlier attempted unsuccessfully to buy the land himself. He objected to the proposed development.
Bovino has had substantial business dealings with Boswell in connection with his own development projects. Gelnaw and Fraser both alleged in their respective complaints that on the day before the plans were due Boswell withdrew from participation in Associates' project in response to Bovino's request. Plans were submitted under the name and seal of another engineer, defendant W. Thomas Watkinson, with whom Associates had had no prior contact. Such request must have occurred no later than February 8, 1990, the date upon which Associates filed its initial application for municipal approval.
Further, Bovino met with Fraser and Dinallo on February 26, 1990 at the offices of Boswell Engineering and offered the sum of $200,000 for Associates to drop the project; Dinallo and Fraser refused.
The Westwood Zoning Board of Adjustment held hearings on this application on July 3, August 7, August 16 and September 6, 1990.
On October 17, 1990, before final resolution of the municipal application, Fraser filed suit (Fraser I) against Bovino, Boswell and Michael F. Rehill. Defendant Rehill is a New Jersey attorney who resides in Westwood and who appeared before the Zoning Board of Adjustment to oppose the proposed condominium project. Fraser alleged in his complaint that he was a licensed real estate broker and that the actions of these defendants in opposing this development project tortiously interfered with the real estate commissions he expected to realize from the project.
On November 7, 1990, four months after submission, the Westwood Zoning Board of Adjustment passed a resolution approving the condominium project. On January 10, 1991, defendant Coventry Square, Inc. (Coventry), a corporation of which Bovino is the principal, commenced an action in lieu of prerogative writs to challenge the municipal approval. Bovino's unsuccessful legal challenge spanned three years, through three courts. It resulted in the Supreme Court's decision in Coventry Square, Inc. v. Westwood Zoning Board of Adjustment, 138 N.J. 285, 650 A.2d 340 (1994).
In light of the Bovino litigation, Fraser I was placed on the inactive list. Before this occurred, however, Rehill successfully moved for summary judgment and an order to that effect was entered on December 3, 1990. Fraser sought to appeal to this court from *24 that summary judgment, but we dismissed the appeal as interlocutory on July 19, 1991.
Coventry Square's challenge delayed the project, and Dinallo and Palumbo were unable to raise the additional funds required under their contract with Gelnaw. By letter dated February 21, 1991, Dinallo and Palumbo notified the Gelnaws that they were abandoning the project.
After the Supreme Court's decision in Coventry Square, Inc., supra, the trial court removed Fraser I from the inactive list. By that time, Bovino and Coventry had determined that Fraser, despite the allegations in the complaint to the contrary, was not a licensed real estate broker at the time of the Gelnaw contract with Dinallo and Palumbo. As a result, he was precluded under N.J.S.A. 45:15-3 from maintaining an action for real estate commissions. The trial court, after extensive argument and consideration, dismissed Fraser I under R. 4:6-4(b), concluding that it was "abusive of the court." The order of dismissal, entered December 20, 1996, made the earlier summary judgment granted to Rehill final. Fraser appealed to this court from the December 20, 1996 order but did not include within his notice of appeal that earlier summary judgment in favor of Rehill. We affirmed the dismissal under R. 4:6-4(b), and the Supreme Court denied certification. 152 N.J. 11, 702 A.2d 350 (1997).
On February 24, 1997, Fraser filed a second complaint (Fraser II) in which James D. Franco, a licensed real estate broker who had been a principal of Realty, joined as a plaintiff. This complaint was amended on March 5, 1997 and again on March 26, 1997. In addition to those defendants originally named in Fraser I, Fraser II included the following defendants: Williamson & Rehill (the law firm of defendant Michael F. Rehill), Coventry Square, Inc., W. Thomas Watkinson, Nino D. Caridi, Esq. (the attorney who filed the complaint in Fraser I), Michael DeMarrais, Esq. (the attorney who succeeded Mr. Caridi in Fraser I), Barry Sirota, Esq., Richard J. Allen, Esq., and the Borough of Westwood. The amended complaint added the respective firms of defendants Watkinson and Demarrais and additional counts.
In its final form, Fraser II alleged the following:
First Count: Bovino, Boswell, Coventry, Rehill and Watkinson violated the Municipal Land Use Law and the New Jersey Anti-Trust Act by lodging "baseless and bogus" objections to Associates' project for "the sole purpose of delaying, hindering, and/or preventing" Associates from receiving municipal approval and competing with Coventry.
Second Count: Bovino, Coventry, Boswell and Rehill violated the New Jersey RICO act by engaging in a pattern of racketeering activity.
Third Count: Bovino, Coventry and Boswell tortiously interfered with Associates' agreement with Boswell for engineering services of which Fraser was a third-party beneficiary.
Fourth Count: Bovino, Coventry and Boswell tortiously interfered with Associates' agreement with Boswell for engineering services and Fraser was a joint venturer with Associates.
Fifth Count and Seventh Count: Bovino maliciously filed a prerogative writs challenge that tortiously interfered with the contract between Associates and Gelnaw to injure Fraser.
Sixth Count: Bovino tortiously interfered with the Gelnaw/Associates contract by offering $200,000 if Associates withdrew its application.
Eighth Count: Bovino, Coventry, Boswell and Rehill engaged in extreme and outrageous conduct that intentionally inflicted emotional distress upon Fraser.
Ninth Count: Borough of Westwood caused Fraser economic harm by failing to preserve certain necessary documents.
Tenth Count: Bovino, Coventry and Boswell tortiously interfered with Fraser's prospective economic advantage.
Eleventh Count: Bovino and Coventry negligently breached a duty to Fraser.
Twelfth Count: Caridi committed legal malpractice in the prosecution of Fraser I.

*25 Thirteenth Count: DeMarrais committed legal malpractice in the prosecution of Fraser I.

Fourteenth Count: Actions of Rehill and Sirota violated the Rules of Professional Conduct and thus constituted legal malpractice.
Fifteenth Count: Boswell committed professional malpractice by abandoning Associates' project.
Sixteenth Count: Watkinson committed professional malpractice by succeeding Boswell on Associates' project.
Seventeenth Count: Certain actions of Allen were unethical and violated the Rules of Professional Conduct.
Bovino, Coventry, Boswell and Rehill moved for summary judgment. After argument, the trial court granted summary judgment to Coventry and dismissed all claims against it. It granted partial summary judgment to Bovino and dismissed all claims against him other than the claim for tortious interference asserted in the tenth count. The trial court's order directed that that claim for tortious interference related back to the claim asserted in Fraser I. The trial court granted the same relief as to the Boswell defendants; specifically, it dismissed all claims against them other than the claim for tortious interference in the tenth count and again directed that that claim related back to the filing of Fraser I. Finally, the trial court dismissed all claims against Michael Rehill, his law firm, and Richard Allen. We granted leave to plaintiffs to appeal the dismissals and to Bovino and Boswell to cross-appeal the denial of complete relief.
Shortly after Fraser II was filed, the Gelnaws, on April 25, 1997, filed a substantially similar complaint. When it was originally filed it included all those joined as defendants in Fraser II with the exception of Watkinson and his firm, who were added as defendants shortly thereafter. The Gelnaw complaint included additional defendants as well: Robert E. Martini, Esq., his firm Martini & LeBow, and Kevin Blessing, Esq., an associate with that firm. The trial court granted summary judgment to all defendants in the Gelnaw matter other than Mr. Blessing, as to whom Gelnaw voluntarily dismissed all claims.

II.
We turn first to the Gelnaw matter (A-4212-97). The complaint in that matter, which substantially tracked the Fraser II complaint, contained fourteen counts that asserted various claims sounding in negligence, tortious interference with contractual rights, tortious interference with prospective economic advantage, infliction of emotional distress, professional malpractice and violations of New Jersey's anti-racketeering statute (N.J.S.A. 2C:41-1 to -6.2) and anti-trust act (N.J.S.A. 56:9-1 to -19). We are satisfied that all of the claims asserted are barred by the respective statute of limitations.
The claims asserted for negligence and infliction of emotional distress are governed by the two-year statute of limitations contained in N.J.S.A. 2A:14-2; claims alleging violation of the antitrust act are controlled by the four-year statute of limitations contained in N.J.S.A. 56:9-12. With the exception of the RICO claim contained in the second count, the remaining claims are controlled by the general six-year statute of limitations set forth in N.J.S.A. 2A:14-1. As to the RICO claim, one New Jersey court has concluded that a four-year period of limitations applies to civil enforcement actions under the RICO statute, as opposed to the five-year limitations that generally controls the initiation of civil actions under the criminal code. (N.J.S.A. 2C:1-6(g)). Matter of Integrity Ins. Co., 245 N.J.Super. 133, 136, 584 A.2d 286 (Law Div.1990). We do not have to decide in this matter whether a four-year or a five-year period of limitations is applicable since the Gelnaw complaint would be untimely under either measure.
The Gelnaw complaint was not filed until April 25, 1997, well beyond any conceivable statutory deadline. We agree with the trial court that nothing within the doctrine of relation back would permit claims asserted by litigants in one action to relate back to claims asserted by different litigants in a different action. R. 4:9-3. Nor is this a matter in which discovery principles might *26 affect the commencement of the limitations period. Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973). Plaintiffs were aware of the circumstances that allegedly gave rise to their asserted causes of action well before the statutes had run their course.
Because we are satisfied the trial court correctly granted summary judgment on limitations grounds, it is unnecessary to consider the potential impact of the entire controversy doctrine upon the Gelnaw matter. We merely note the amendment of R. 4:30A that removed the reference to non-joinder of parties. As to the obligation of a non-party to move affirmatively to intervene in a pending action, see Baureis v. The Summit Trust Co., 280 N.J.Super. 154, 163-64, 654 A.2d 1017 (App.Div.), certif. denied, 141 N.J. 99, 660 A.2d 1197 (1995).
It is necessary to discuss separately the claim asserted in thirteenth count of the Gelnaw complaint against Robert Martini, Esq., the firm of Martini & LeBow, and the firm's associate Kevin Blessing, Esq. This claim asserts that Gelnaw retained the attorneys in October 1996 to prosecute an action for damages against Rehill, Bovino, Coventry and Boswell based upon their actions in opposing Associates' application for land use approvals and that the attorneys failed to file a timely complaint. Because the limitations period had long since expired in the other claims, the only claims that were conceivably viable when plaintiffs allegedly retained the attorneys were those subject to the six-year limitations period. The attorneys disputed that they were, indeed, retained by Gelnaw. It is unnecessary to resolve that issue, however, for Gelnaw admitted in its interrogatory answers that the attorneys had returned the file to them on January 28, 1997. By that date, several weeks remained before the six-year statute of limitations expired. The attorneys could therefore withdraw from representing Gelnaw "without [a] material adverse effect" on Gelnaw's interests. RPC 1.16(b). In that posture, Mr. Martini and his firm were properly granted summary judgment.

III.
We turn now to the claims asserted in Fraser II (A-3922-97), several of which may be disposed of easily. First among these is the claim asserted against Rehill. As noted earlier, Rehill was named as a defendant in Fraser I and obtained summary judgment on the merits. That award of summary judgment was never appealed and constituted a complete adjudication on the merits. Rehill, having received summary judgment in Fraser I, could not be joined as a defendant on those same claims in Fraser II. The trial court's grant of summary judgment to Rehill and his firm on all claims asserted against him was entirely proper.
The claims against Watkinson and Boswell contained in the fifteenth and sixteenth counts relate to Boswell's withdrawal from the project and the consequent succession of Watkinson. As we noted earlier, however, the application of Associates for approval was granted within four months of its filing. It is clear, therefore, that the substitution of Watkinson for Boswell caused absolutely no harm to Fraser for the project received all the requisite municipal approvals. Summary judgment was properly granted on these counts.
Appellants contend that their cause of action accrued on February 21, 1991, when Dinallo and Palumbo terminated their contract. Assuming, without deciding, that appellants are correct in that assertion, the first and second counts of Fraser II are clearly time-barred since it was filed well beyond the limitations periods that, as noted earlier, govern anti-trust and RICO claims.
The eighth count asserted that Bovino, Coventry and Boswell committed the intentional tort of outrage which inflicted emotional distress upon Fraser; as such, it was subject to the two-year period of limitations of N.J.S.A. 2A:14-2. It was clearly untimely and summary judgment was proper.
The remaining counts against Bovino and Coventry relate to their actions in opposing Associates' application for the condominium development project. Bovino owned property within 200 feet of the proposed *27 development, and therefore possessed a statutory right to receive notice of the application and appear in opposition to the requested variances. N.J.S.A. 40:55D-12b. We are satisfied that an exercise of that statutory right, without more, cannot give rise to a cause of action for damages. Likewise, Bovino's exercise of his further right to appeal any determination by the Westwood Zoning Board of Adjustment could not give rise to a cause for action for loss of real estate commissions.
Although appellants' drafted this portion of their complaint in terms of defendants' alleged interference with economic advantage, we find instructive the principles expressed in cases that have examined the Noerr-Pennington exception to anti-trust claims. Under the Noerr-Pennington doctrine, those who petition the government for redress are generally afforded immunity from anti-trust liability. United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc. 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).
Recognizing the fundamental values that undergird a citizen's right to communicate on issues of public import, courts have applied the Noerr-Pennington doctrine in contexts beyond claims of anti-trust activity. See, e.g., Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 160 (3d Cir.1988) ("`[A]s a matter of law, defendants' actions in calling ... [the nursing home's] violations to the attention of state and federal authorities and eliciting public interest cannot serve as the basis of tort liability"); Barnes Foundation v. Twp. of Lower Merion, 927 F.Supp. 874, 876-78 (E.D.Pa.1996) (neighbors who met to discuss and then to protest alleged violations of land use ordinances exempt from tort liability under Noerr-Pennington); Village Supermarket v. Mayfair, 269 N.J.Super. 224, 229-32, 634 A.2d 1381 (Law Div.1993) (objector to competitor's application before planning board hearing immune under Noerr-Pennington to claims for intentional interference with contract and prospective economic advantage). The one exception to such immunity is if the conduct at issue "is a mere sham to cover ... `an attempt to interfere directly with the business relationships of a competitor.'" Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60-61, 113 S.Ct. 1920, 1928, 123 L.Ed. 2d 611 (1993) (quoting Noerr, supra, 365 U.S. at 144, 81 S.Ct. at 533).
The question whether the conduct at issue constitutes a mere sham, thus subjecting the actor to the potential of tort liability, is answered objectively, without consideration of the actor's underlying motivation, no matter how improper it may be. "[T]he legality of objectively reasonable petitioning `directed toward obtaining governmental action' is `not at all affected by any anticompetitive purpose [the actor] may have had.'" Professional Real Estate Investors, supra, 508 U.S. at 59, 113 S.Ct. at 1927 (citations omitted); "That a private party's... motives are selfish is irrelevant (under Noerr-Pennington)." City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 380, 111 S.Ct. 1344, 1354, 113 L.Ed.2d 382 (1991).
Our Supreme Court has not definitively ruled on whether Noerr-Pennington immunity may preclude tort liability. Indeed, in Snyder v. American Ass'n. of Blood Banks, 144 N.J. 269, 296, 676 A.2d 1036 (1996), it specifically declined to reach that determination. Nothing within that opinion, however, indicates that if the Court were presented with a matter such as this, it would conclude that those entitled to assert objections to a land use application may, as a consequence, incur tort liability if their actions result in the loss of anticipated real estate commissions by a third party. We are satisfied that the same principles which form the basis of the Noerr-Pennington doctrine entitle those who have standing to object to land use applications to immunity from claims for damages based upon the exercise of their right to object.
We are persuaded that the test for determining whether such immunity may be invoked or defeated is an objective one as outlined in Professional Real Estate Investors, supra. A subjective test, which would *28 of necessity require a consideration of underlying motivation, is both impractical and poses a risk of chilling a citizen's right to appear before local boards for fear of exposure to liability for damages.
In Professional Real Estate Investors, supra, the United States Supreme Court concluded that to constitute sham litigation, and thus expose a litigant to loss of Noerr-Pennington immunity, "the lawsuit must be objectively baseless in the sense that no reasonable litigant ... could conclude that the suit is reasonably calculated to elicit a favorable outcome." 508 U.S. at 60, 113 S.Ct. at 1928. As we noted earlier in this opinion, our Supreme Court granted certification in Coventry Square, Inc., supra, and heard the matter. Since Coventry's challenge to the municipal approvals clearly fulfilled the criteria under R. 2:12-4 for certification, as a matter of law its challenge could not be considered a sham. Bovino and Coventry were thus entitled to summary judgment on all claims against them asserting tortious interference with economic advantage.
When the matter was presented to the trial court, it concluded that Coventry Square was entitled to immunity but not its principal, Bovino. As to Bovino, the trial court concluded that plaintiffs' claims in Fraser II against Bovino should survive under the principles enunciated in Zaccardi v. Becker, 88 N.J. 245, 440 A.2d 1329 (1982). Zaccardi, however, implicated a statute of limitations issue, not immunity under Noerr-Pennington. Under all that has been presented in this matter, there is no basis to distinguish between Coventry Square, Inc. and its principal, Bovino, for purposes of such immunity. The actions of one cannot be separated from the actions of the other. If the corporation is entitled to summary judgment, as we are satisfied it is, its principal is as well.
The remaining issue which must be addressed insofar as plaintiffs' claims for tortious interference are concerned is the conclusion of the trial court that plaintiffs' claims for tortious interference against Boswell in the tenth count of the Fraser II complaint should survive. The trial court approached the matter under Zaccardi, supra, in which the Supreme Court concluded that defendants would be estopped from asserting a statute of limitations defense because their actions had contributed to the delay and confusion in prosecution of the matter. Zaccardi, supra, 88 N.J. at 260, 440 A.2d 1329.
We approach the matter differently, however. Plaintiffs assert only two allegations of wrongful conduct against Boswell: the refusal to sign the engineering plans and drawings, allegedly at the behest of Bovino, and that the meeting at which Bovino offered $200,000 to not pursue the application occurred at Boswell's office. Because the project received all necessary municipal approvals, the substitution of Wilkinson for Boswell as project engineer did not result in any loss of commissions. The same result obtains for the alleged meeting; the proffer of money to drop the project did not result in any loss of commissions since the proffer was refused. We are satisfied that plaintiffs' complaint fails to state a cause of action against Boswell and that Boswell was entitled to an order dismissing all claims asserted against it.
We turn finally to plaintiffs' claims against Richard Allen, Esq. who represented Bovino and Coventry in connection with their challenge to this condominium project both before the Westwood Zoning Board of Adjustment and the later litigation. Plaintiffs allege that Allen committed malpractice and acted unethically in certain regards. Allen, however, representing an objector to a land use application, did not owe plaintiffs, the broker, even a limited duty of care. Petrillo v. Bachenberg, 139 N.J. 472, 483-84, 655 A.2d 1354 (1995); Stewart v. Sbarro, 142 N.J.Super. 581, 593, 362 A.2d 581 (App.Div.), certif. denied, 72 N.J. 459, 371 A.2d 63 (1976). While Allen denies any ethical missteps, we have no occasion to pass upon his conduct. Redress for any impropriety must be sought in another forum, not in the courts. Baxt v. Liloia, 155 N.J. 190, 197-98, 211, 714 A.2d 271 (1998).
The orders under review in A-4212-97 granting summary judgment to defendants are affirmed. The orders under review in A-3922-97 granting summary judgment to defendants *29 are affirmed. On the cross-appeal, that portion of the orders denying summary judgment to Bovino, Boswell Engineering, Steven Boswell and Edward Arata are reversed.