**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2718-20

FRANK ANGRISANI,

    Plaintiff-Appellant,

v.

KEVIN M. COSTELLO, ESQ.,
and COSTELLO & MAINS, LLC,

    Defendants-Respondents.

_____

Argued November 14, 2023 – Decided December 6, 2023

Before Judges Haas and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6033-18.

Frank Angrisani, appellant, argued the cause pro se (Ernest W. Schoellkopff, on the briefs).

Peter M. Perkowski, Jr., argued the cause for respondents (Riker Danzig Scherer Hyland & Perretti, LLP, attorneys; Lance Jon Kalik, of counsel and on the brief; Peter M. Perkowski, Jr., and Venanzio Edward Cortese, on the brief).

PER CURIAM

In this legal malpractice case, plaintiff Frank Angrisani appeals from the Law Division's orders dismissing his complaint against his former attorneys, defendants Kevin M. Costello and his law firm Costello & Mains, LLC. The origins of this case go back to plaintiff's 2010 settlement of his lawsuit against Financial Technology Ventures, LP (FTV), where plaintiff sought damages for his financial losses as a result of Nexxar's acquisition of a Brazilian money transfer company, Uno Money Transfer Co. (Uno), as well as the termination of his employment as CEO of Nexxar.

Plaintiff retained Larry Orloff, Esq. and his firm Orloff, Lowenbach, Stifelman & Siegel, PA. (collectively OLSS) to prosecute his claims against FTV and Nexxar. OLSS withdrew from representing plaintiff, and he retained defendants to continue to pursue the litigation. That action ended with a settlement.

Discontented with his settlement, plaintiff claimed legal malpractice against OLSS in a prior lawsuit that was dismissed. On August 17, 2018, plaintiff filed a five-count legal malpractice complaint against defendants. Plaintiff alleged that defendants improperly recommended an insufficient settlement in plaintiff's underlying litigation against FTV and Nexxar, and failed

2

to file suit against two other law firms, Pillsbury Winthrop (Pillsbury) and Sills Cummis (Sills), the attorneys for the parties to the joint venture with Nexxar.

In a trio of orders, the trial court dismissed each of these claims. The court found that plaintiff's allegations about defendants' handling and settlement of the FTV and Nexxar litigation, and his claim that defendants failed to sue Pillsbury were barred by the statute of limitations. The court also found that plaintiff's arguments concerning Sills failed for lack of proximate cause. The court further ruled that all three claims were barred by the doctrine of collateral estoppel.

Plaintiff challenges all of the trial court's rulings on appeal. Having considered his contentions in light of the record and the applicable law, we affirm.

I.

A.  Background

The parties are fully familiar with the underlying procedural history and facts of this matter. Therefore, we will summarize only the most salient points here.

The essential background of the litigation that spawned plaintiff's legal malpractice action in this appeal are as follows:

[Plaintiff], an expert in the field of worldwide money transfers, developed a business plan that resulted in his creation of a wholly owned corporation, Axxa Group, Inc. (AGI), in which he deposited his intellectual property and related business plan information. After forming AGI, he initiated a search for venture capital partners willing to invest in the new company.

Eventually [plaintiff] entered into an agreement with [FTV]. [Plaintiff] continued to serve as chief executive officer and president of AGI, and was a member of its board of directors.

In order to develop the business, FTV approved AGI's acquisition of a Brazilian money transfer company, [Uno]. [Plaintiff's] authorization to participate in the ensuing due diligence inquiry, prior to the company's acquisition, is disputed. It is not disputed that the company was acquired in November 2003. AGI subsequently changed its name to [Nexxar]. [Plaintiff] turned his AGI stock over to the new venture.

. . . .

After acquisition, it was learned Uno's operation was illegal under Brazilian law, and possibly under American law as well. When [plaintiff] advised the Nexxar board of Uno's illegality, he claims he was terminated as a result.

From 2006 to 2010, OLSS, and Orloff individually, represented [plaintiff] in lawsuits against FTV and Nexxar seeking to recover damages for [plaintiff's] significant financial losses as a result of Nexxar's financially disastrous acquisition of Uno, as well as from his termination of employment. [OLSS] withdrew from representing [plaintiff] in 2010.

[Orloff, Lowenbach, Stifelman & Siegel, PA v. Angrisani, No. A-3724-13 (App. Div. Feb. 12, 2016) (slip op. at 2-3), certif. denied, 226 N.J. 211 (2016).]

In May 2010, plaintiff retained defendants to represent him in the FTV litigation after OLSS was relieved as counsel. In June 2010, defendants attempted to reopen discovery, but that motion was denied due to the age of the case. Thereafter, defendants advised plaintiff to settle his claims in the FTV litigation and to file a legal malpractice claim against OLSS.

According to plaintiff, defendants advised him that they "could not try the case against FTV because of Orloff's legal malpractice in failing to take certain depositions and take certain actions with regard to evidence and discovery," and therefore, plaintiff had "'no choice' but to settle the case and then pursue a legal malpractice claim against [OLSS]." Plaintiff "was reluctant to settle the case" but, based on defendants' advice, authorized them to settle the FTV litigation.

On September 14, 2010, plaintiff settled the FTV litigation for $800,000. On that same date, plaintiff executed a "Settlement Agreement and Mutual Release of Claims," which contained the following disclaimer directly above plaintiff's signature line:

> CAUTION: THIS IS A RELEASE OF ALL CLAIMS;
> READ BEFORE SIGNING

> I have read the foregoing Settlement Agreement and Release of Claims, and I understand its contents. I have reviewed the entire document with my attorney, and understanding its terms and conditions, agree to abide by it.

On September 24, 2010, the parties, through their respective attorneys, executed a stipulation of dismissal with prejudice, dismissing the FTV litigation with prejudice.

### B.    The OLSS Legal Malpractice Litigation

After settling the FTV litigation, plaintiff retained defendants to sue OLSS for legal malpractice. After OLSS first sued plaintiff for unpaid legal bills, defendants filed plaintiff's answer to the complaint and a counterclaim against OLSS for legal malpractice. Plaintiff later hired Leo B. Dubler, Esq. to serve as co-counsel with defendants.

In June 2012, defendants recognized that Dubler was doing the bulk of the work and they moved to be relieved as plaintiff's counsel. Plaintiff agreed and the trial court issued an order relieving defendants as plaintiff's attorneys. Dubler was plaintiff's sole attorney in the litigation from that point forward.[1]

---

[1]  Plaintiff subsequently sued Dubler and several other attorneys for legal malpractice.

A-2718-20

On November 26, 2013, the trial court granted OLSS summary judgment, dismissing all of plaintiff's legal malpractice claims.  Plaintiff appealed and we affirmed in a February 12, 2016 decision.  Orloff, (slip op. at 1).

C.    The Present Litigation

Plaintiff filed the instant action on August 17, 2018, alleging defendants had been negligent in representing him in the FTV litigation.  Plaintiff's claims of legal malpractice were essentially two-fold:  first, defendants improperly advised him not to pursue his claims in the FTV litigation to judgment, but rather to accept a settlement that did not reflect their true value and then to sue Orloff and OLSS for negligence; and second, defendants failed to advise him of potential claims against Pillsbury and Sills and allowed the statute of limitations to run on those claims.

The trial court dismissed plaintiff's legal malpractice claims against defendants in three separate motions over the course of two years.  We address each of plaintiff's challenges to those rulings in turn.

II.

Plaintiff first contends that the trial court erred by dismissing his legal malpractice claim for the insufficient settlement.  Because plaintiff's claim on

7

this point was clearly barred by the six-year statute of limitations, we affirm the court's dismissal of that claim.

To present a prima facie legal malpractice claim, a claimant must establish "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996); Fitzgerald v. Linnus, 336 N.J. Super. 458, 467 (App. Div. 2001). Proximate cause is established by showing that the negligent conduct was a substantial factor in causing the claimant's damages. Conklin, 145 N.J. at 419-22. In order to survive a motion for summary judgment, a legal malpractice plaintiff must show that he or she could have presented a prima facie case in the matter in which the malpractice allegedly occurred. Jerista v. Murray, 185 N.J. 175, 191 (2005).

A claim of legal malpractice is subject to the six-year statute of limitations. McGrogan v. Till, 167 N.J. 414, 419 (2001) (citing numerous cases applying N.J.S.A. 2A:14-1). Specifically, N.J.S.A. 2A:14-1 provides:

> Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in N.J.S.A. 2A:14-2 and N.J.S.A. 2A:14-3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the

8

> trade or merchandise between merchant and merchant, their factors, agents and servants, <u>shall be commenced within six years next after the cause of any such action shall have accrued</u>.
>
> [(emphasis added).]

The New Jersey Legislature did not define the term "accrued" in N.J.S.A. 2A:14-1 or other similar statutes of limitations, and "therefore left to the judiciary the role of infusing this term with meaning." <u>Palisades at Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC</u>, 230 N.J. 427, 443 (2017). In construing accrual statutes, the New Jersey Supreme Court has avoided "a rigid and automatic adherence to a strict rule of law" that would produce unjust results. <u>Lopez v. Swyer</u>, 62 N.J. 267, 273-74 (1973). "Ordinarily, a cause of action 'accrues when an attorney's breach of professional duty proximately causes a plaintiff's damages.'" <u>Vastano v. Algeier</u>, 178 N.J. 230, 236 (2003) (quoting <u>Grunwald v. Bronkesh</u>, 131 N.J. 483, 492 (1993)).

"The discovery rule is an equitable doctrine created by the courts to protect unsuspecting persons from statutory limitations periods during which a claim must be brought or forever lost." <u>Dunn v. Borough of Mountainside</u>, 301 N.J. Super. 262, 273 (App. Div. 1997). Under the rule, a claim does not accrue until the plaintiff "discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable

9

claim." Lopez, 62 N.J. at 272. The discovery rule "'postpon[es] the accrual of a cause of action' so long as a party reasonably is unaware either that he has been injured, or that the injury is due to the fault or neglect of an identifiable individual or entity." Abboud v. Viscomi, 111 N.J. 56, 62 (1988).

"Once a person knows or has reason to know of this information, his or her claim has accrued since, at that point, he or she is actually or constructively aware 'of that state of facts which may equate in law with a cause of action.'" Ibid. (quoting Burd v. N.J. Tel. Co., 76 N.J. 284, 291 (1978)). Thus, "[t]he limitations period begins to run when a plaintiff knows or should know the facts underlying those elements, not necessarily when a plaintiff learns the legal effect of those facts." Grunwald, 131 N.J. at 492. See also Lapka v. Porter Hayden Co., 162 N.J. 545, 555-56 (2000) ("We impute discovery if the plaintiff is aware of facts that would alert a reasonable person to the possibility of an actionable claim; medical or legal certainty is not required.").

"Whether a cause of action is barred by a statute of limitations is a question of law, also reviewed de novo." Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016). "The application of the discovery rule is for the court, not a jury, to decide." Ibid.

Here, the trial court determined that plaintiff's claim for legal malpractice relating to the advice defendants provided him concerning the FTV settlement was barred by the six-year statute of limitations. The court stated:

> . . . Plaintiff's action accrued at the time of settlement, September 24, 2010, rather than when [plaintiff] subsequently consulted Mr. Piekarsky, another attorney[, who provided plaintiff with expert reports concerning defendants' liability for legal malpractice].
>
> At the time that [p]laintiff accepted the settlement money, he either suffered actual damage or should have discovered "through the use of reasonable diligence" "facts essential to the malpractice claim," which in this case was that the amount [p]laintiff settled for was not reflective of what [p]laintiff perceived to be the value of his case against FTV. [Plaintiff's] awareness of the malpractice claim is evidenced by the language within the [c]omplaint, which states, "[plaintiff] was reluctant to settle the case, but Costello advised him to settle and pursue claims against Orloff. [Plaintiff], in relying upon Costello's advice, settled his valuable claims against FTV, though the settlement did not reflect the value of his claims." Moreover, this [c]ourt does not see any reason to doubt that [plaintiff] would immediately associate Costello as the cause of his injury as Costello was [p]laintiff's attorney when the FTV litigation settled.

Thus, based on the allegations set forth in plaintiff's own complaint, the trial court correctly determined that plaintiff was aware of the facts underlying his claim for insufficient settlement at the time he settled the FTV litigation and dismissed his claims against FTV, which was no later than September 24, 2010.

11

Plaintiff was admittedly "reluctant to settle the case" because he believed that "the settlement did not reflect the value of his claims." Notwithstanding his belief, plaintiff settled the case based on defendants' advice. Because plaintiff relied on defendants' advice to accept a settlement that he believed was insufficient, plaintiff had knowledge of the two key elements that triggered the discovery rule, injury and fault. Grunwald, 131 N.J. at 492-93. At the very least, plaintiff should have known, or by exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim. Lopez, 62 N.J. at 272.

Thus, because plaintiff dismissed his claim against FTV on September 24, 2010, via stipulation of dismissal, he had until September 24, 2016, to sue defendants for malpractice based on the allegedly insufficient settlement. However, plaintiff did not file his legal malpractice complaint until August 17, 2018, approximately eight years after the accrual of his cause of action and almost two years beyond that applicable statute of limitations. Therefore, plaintiff's insufficient settlement claim was plainly time-barred. McGrogan, 167 N.J. at 419; N.J.S.A. 2A:14-1.

Plaintiff's argument that the statute of limitation should not have run until after he consulted with Piekarsky and became fully aware of defendants' alleged

malpractice is not persuasive, because legal certainty is not required for his claim to accrue. Lapka, 162 N.J. at 555-56. Plaintiff was aware of his alleged injury and that defendants were allegedly at fault. Therefore, even if plaintiff was not aware of his claim at that time, had he exercised reasonable diligence and intelligence, he would have discovered that he may have a basis for an actionable claim. Lopez, 62 N.J. at 272.

Furthermore, plaintiff's argument that defendants were required to advise him of this alleged malpractice is also unpersuasive. As the trial court also found in dismissing plaintiffs' complaint on collateral estoppel grounds, plaintiff failed to establish a fair settlement value of his claims, and therefore, could not show that the $800,000 settlement was insufficient. Thus, there was no evidence that the settlement was actually insufficient. As a result, there was no evidence to suggest that defendants had reason to believe that the settlement was insufficient and, therefore, they had no duty to advise plaintiff that they may have committed malpractice by advising him to settle the FTV litigation.

13

Because plaintiff's claim concerning the inefficient settlement was barred by the statute of limitations, the trial court correctly dismissed this portion of his complaint on this ground.[2]

## III.

Plaintiff next contends that the trial court erred by granting defendants' motion for summary judgment and dismissing his legal malpractice claim for failing to sue Pillsbury during the FTV litigation. Because this claim was also clearly barred by the six-year statute of limitations, we affirm the court's decision.

Our review of a trial court's grant of summary judgment is de novo, applying the same legal standard as the trial court. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as

---

[2] Therefore, we need not address the trial court's alternative ruling that the insufficient settlement claim was also subject to dismissal based upon the collateral estoppel doctrine.

a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38); see also R. 4:46-2(c).

In holding that plaintiff's legal malpractice claim for failing to sue Pillsbury was barred by the statute of limitations, the trial court noted that, "[w]hile an exact date of [plaintiff]'s actual knowledge of the actual claim is not determinable from the undisputed facts presented, the date when a reasonable person would have known is." The court determined that plaintiff "should have known of the potential malpractice claim no later than October 2011." The court explained:

> Over a six-year period between 2005 to 2011[, plaintiff] was exposed to information a reasonable person would have discovered as a basis for a malpractice claim. . . .
>
> The [c]ourt observes a timeline as follows. First, August 2005, [plaintiff] was shown an email by Jim Cornell. May 2007, [plaintiff] discusses potential claim against Pillsbury with Orloff. May 2010, Costello replaces Orloff in the FTV litigation. September 2010, FTV litigation settles. February 2011, [plaintiff] brings a counterclaim in [the] Orloff litigation against Orloff. October 2011, Dubler sends a letter concerning claim of malpractice against Pillsbury and [plaintiff]. And August 17th, 2018, [plaintiff] files a lawsuit against Costello.
>
> Based on all the facts [plaintiff] was exposed to, by October 27th, 2011, [plaintiff] should have known there was a potential cause of action against . . . Pillsbury. . . . Based on . . . that date [plaintiff] had

15

until October 27, 2017, to file a claim against Pillsbury. The core cause of action was initiated August 17, 2018, almost 10 months after . . . [the] statute of limitations had expired. Thus for the reasons stated above, [plaintiff's] claim against Costello for failing to sue Pillsbury is dismissed with prejudice.

We discern no basis for disturbing the trial court's findings of fact or conclusions of law on this issue. As the court specifically found, between 2005 and 2011, plaintiff knew or should have known that he had a potential legal malpractice claim against defendants. At the very least, he was "aware of facts that would alert a reasonable person to the possibility of an actionable claim[.]" Lapka, 162 N.J. at 555; Grunwald, 131 N.J. at 492.

Plaintiff testified at a deposition that in August 2005, Cornell showed him a 2003 email correspondence wherein Pillsbury advised FTV that it should reconsider its acquisition of Uno because Uno's operations violated Brazilian financial and banking laws and potentially violated United States law. While plaintiff claimed that Pillsbury never shared the information with him, he nonetheless became aware of that information no later than August 2005 when he saw the email.

Plaintiff also testified that he had requested that Orloff add Pillsbury as a party to the FTV litigation; and he had a conversation in which he specifically advised Orloff that he wanted to join Pillsbury. Further, plaintiff certified, in

16

the Dubler litigation, that "[t]hroughout the first four years of Mr. Orloff's representation, [plaintiff] continually requested Orloff depose Pillsbury as they had been an integral part of the formation of Nexxar . . . [n]onetheless, Mr. Orloff vehemently refused to depose Pillsbury executives." As a result of his continued frustration with Orloff's refusal to proceed against Pillsbury, plaintiff "contacted the U.S. Justice Department and anonymously discussed how a law firm and a venture capital firm were misleading financial institutions and may have committed money laundering, [violated] U.S. Patriot Act Laws, and aided and abetted tax [e]vasion by foreign entities."

On December 4, 2006, Orloff filed the complaint in the FTV litigation without naming Pillsbury as a defendant. When defendants replaced Orloff and OLSS as counsel in the FTV litigation in May 2010, defendants did not amend the pleading to add Pillsbury. In September 2010, defendants advised plaintiff to settle his claims in the FTV litigation and, based on that advice, plaintiff voluntarily settled his claims against FTV and Nexxar.

On September 14, 2010, plaintiff executed the "Settlement Agreement and Mutual Release of Claims," wherein he forever released any and all claims against FTV, Nexxar, and, among others, their attorneys, relating to his employment and discharge from Nexxar and to the FTV litigation. Specifically,

17

the settlement agreement contained a disclaimer directly above plaintiff's signature line which stated, in part: "CAUTION: THIS IS A RELEASE OF ALL CLAIMS; READ BEFORE SIGNING."

Plaintiff was aware that Pillsbury was FTV's attorney for the acquisition of Uno, which plaintiff alleged caused him damages. Thus, plaintiff was aware, or at the very least should have been aware, that by executing the Settlement Agreement, he was releasing any and all potential claims he may have had against Pillsbury. His argument that he was not specifically advised of the release language in the Settlement Agreement, and therefore was not aware of the release of his claims against Pillsbury, is not persuasive. The above-cited provision expressly cautioned plaintiff that he was releasing his claims and it advised him to read the document before signing it. Plaintiff, by signing the document, acknowledged that he had in fact read it, understood it, and agreed to be bound by its terms.

Furthermore, under New Jersey law, by signing the settlement agreement, plaintiff is presumed to have read it and is precluded from claiming that he did not. "It is the general rule that where a party affixes his signature to a written instrument . . . a conclusive presumption arises that he read, understood and assented to its terms and he will not be heard to complain that he did not

comprehend the effect of his act in signing." Peter W. Kero, Inc. v. Terminal Constr. Corp., 6 N.J. 361, 368 (1951). Accord County of Morris v. Fauver, 153 N.J. 80, 110 (1998) (noting the "presum[ption] that the parties to a contract know the terms of their agreement"). See also Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 386 (1960) (As a general rule, "one who does not choose to read a contract before signing it, cannot later relieve himself of its burdens."). Thus, it is immaterial that plaintiff claims that he did not read the settlement agreement in its entirety.

As a result of the foregoing, the record supports the trial court's conclusion that plaintiff had actual knowledge that he released his potential claims against Pillsbury when he executed the settlement agreement and actually dismissed the FTV litigation, which occurred on September 14, 2010, and September 24, 2010, respectively. By relying on defendants' advice to accept and execute the settlement agreement, which released his potential claims against Pillsbury, plaintiff had knowledge of the two key elements that triggered the discovery rule, injury and fault. Grunwald, 131 N.J. at 492-93; Lapka, 162 N.J. at 555-56.

Accordingly, plaintiff had until September 24, 2016, to file his legal malpractice claim against defendants within the statute of limitations. However,

19

plaintiff did not do so until August 17, 2018, nearly two years after the expiration of the statute of limitations.

Moreover, notwithstanding the foregoing, by letter dated October 27, 2011, Dubler advised defendants and plaintiff of plaintiff's potential claims against Pillsbury and that OLSS had committed legal malpractice by failing to sue Pillsbury. At that time, defendants and Dubler were assessing OLSS's potential liability for failing to prosecute plaintiff's claims against Pillsbury. Specifically, the letter provided:

> In the September to November 2003 time period, it is clear that Pillsbury knew that the way Uno was operated was illegal. Further, they also learned that it was probably a crime under Brazilian law. Pillsbury told FTV and never disclosed it to [plaintiff].
>
> . . . .
>
> Orloff should have filed fraud claims, conspiracy to commit fraud claims, securities claims, and a RICO claim against Pillsbury and the individuals involved in perpetrating the fraud.
>
> Larry Orloff did not file suit against Pillsbury. Larry Orloff did not depose any of the employees of Pillsbury. Larry Orloff did not subpoena Pillsbury's records.

As a result of Dubler's October 27, 2011 letter, which was also sent directly to plaintiff, plaintiff was advised by legal counsel that he had a potential claim against Pillsbury and that neither OLSS nor defendants had filed suit

against Pillsbury. Plaintiff had settled all his claims against FTV and Nexxar and dismissed the FTV litigation, and by signing the settlement agreement, he was aware that he released any and all potential claims he may have had against Pillsbury. Peter W. Kero, Inc., 6 N.J. at 368; Henningsen, 32 N.J. at 386.

Plaintiff contends that he did not become aware of defendants' culpability until 2018, when he received expert legal opinions from his liability experts regarding the same. That position is not persuasive because, as set forth above, the limitations period began to run when he knew or should have known the facts that form the basis of a cause of action, "not necessarily when a plaintiff learns the legal effect of those facts." Grunwald, 131 N.J. at 492; Lapka, 162 N.J. at 555-56. The record demonstrates that plaintiff learned sufficient facts to form the basis of a cause of action no later than the date he received the October 27, 2011, letter, which was likely October 28, 2011,[3] since his direct copy was sent via Federal Express. That letter independently gave plaintiff knowledge of injury and fault to trigger the discovery rule. Grunwald, 131 N.J. at 492-93; Lapka, 162 N.J. at 555-56.

---

[3] Although the letter was sent via facsimile to plaintiff's counsel, his copy was sent via Federal Express. October 27, 2011, was a Thursday, so plaintiff likely received his copy of the letter on Friday, October 28, 2011, or Monday, October 31, 2011, as it is unclear from the letter whether it was sent via overnight mail.

Thus, at the latest, the statute of limitations ran after plaintiff received the October 27, 2011 letter. Even if he received that letter as late as October 31, 2011, plaintiff was required to file suit against defendants by October 31, 2017. However, he did not file suit until August 17, 2018. His legal malpractice claim against defendants for failing to file suit against Pillsbury was thus time-barred.

Therefore, we affirm the trial court's determination that plaintiff's claim concerning Pillsbury was barred by the six-year statute of limitations.[4]

IV.

Finally, plaintiff argues that the trial court erred by granting summary judgment to defendants and dismissing his legal malpractice claim for defendants' failure to sue Sills in the FTV litigation. Again, we disagree.

The trial court found that plaintiff was unable to demonstrate that defendants were the proximate cause of plaintiff's alleged damages. In this regard, plaintiff asserts that defendants should have sued Sills before the statute of limitations barring such a claim expired. However, the court found that plaintiff's cause of action against Sills accrued no later than December 2008, and defendants stopped representing plaintiff in September 2012. After that,

---

[4] Therefore, we need not address the trial court's alternative ruling that plaintiff's legal malpractice claim concerning defendants' failure to sue Pillsbury was also subject to dismissal based upon the collateral estoppel doctrine.

plaintiff had twenty-seven additional months to sue Sills before the statute of limitations expired. As a result, the court concluded that defendants could not have been the proximate cause of any damages plaintiff sustained by not suing Sills.

As set forth above, to establish a prima facie legal malpractice claim, a claimant must prove the existence of an attorney-client relationship, breach of duty, and proximate causation. Conklin, 145 N.J. at 416. Proximate cause is established by showing that the negligent conduct was a substantial factor in causing the claimant's damages. Id. at 419-22. Stated differently, proximate cause is "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." Dawson v. Bunker Hill Plaza Assocs., 289 N.J. Super. 309, 322 (App. Div. 1996) (quoting Fernandez v. Baruch, 96 N.J. Super. 125, 140 (App. Div. 1967), rev'd on other grounds, 52 N.J. 127 (1968)).

Here, the record does not support the conclusion that plaintiff could establish a prima facie claim of legal malpractice for defendants' failure to sue Sills. First, Dubler considered a legal malpractice claim against Orloff for his failure to sue Sills. However, after evaluating Sills's potential liability, Dubler

decided not to file such a claim. Furthermore, in his May 13, 2013 supplemental expert report, plaintiff's expert Michael Galpern concluded that Sills did not deviate from the applicable standard of care or breach any duty to plaintiff by including an integration clause in the stock purchase agreement involved in the FTV litigation. Indeed, it is not clear from the record that plaintiff had a viable claim against Sills.

Second, the record does not support the conclusion that defendants were the proximate cause of plaintiff's alleged damages because it is undisputed that Dubler had sufficient opportunity to consider, investigate, and file a lawsuit against Sills after defendants withdrew from representing plaintiff. Dubler had approximately twenty-seven months to evaluate any potential claim but chose not to file a lawsuit against Sills. Indeed, plaintiff's liability expert, Scott B. Piekarsky, Esq., confirmed at a deposition that Dubler had approximately twenty-seven months to evaluate any potential claim but chose not to file a lawsuit against Sills, and that plaintiff had hired a legal malpractice expert to assist Dubler in making that evaluation and decision. There was no evidence that Dubler was prevented from asserting a claim against Sills. Rather, the record supports the conclusion that Dubler sufficiently considered the issue but chose not to assert a claim against Sills.

24

Simply put, plaintiff cannot establish that defendants were the proximate cause of his alleged damages because his subsequent counsel had ample time and opportunity to file suit against Sills within the applicable statute of limitations. See 4 Ronald E. Mallen, Legal Malpractice § 33:12 (2023 ed.) ("[W]here a lawyer's employment ends and ample time remains for the client or successor counsel to complete the task for which the lawyer is sued[,] . . . causation analysis [establishes that] the lawyer is not liable if there was sufficient time to complete the task."); id. at § 33:13 ("An accepted proposition is that a lawyer is not liable for an omission that occurred during the representation of successor counsel or after withdrawal, where ample time remained to perform the act or task.").

This conclusion is firmly supported by our decision in Fraser v. Bovino, 317 N.J. Super. 23 (App. Div. 1998). In Fraser, after a land deal fell through due to delays caused by an unsuccessful challenge to municipal approval of a condominium project, Robert Fraser brought actions starting in 1990 against various parties that opposed the project, and in 1997 William and Donald Gelnaw instituted a similar action. Id. at 30-33. We held that all the claims in the Gelnaws' action and several of the claims in Fraser's actions were properly dismissed pursuant to statutes of limitations. Id. at 34, 36. However, only the

Gelnaws had included a claim of legal malpractice against their former attorneys, for failing to ensure that the claims against the objectors were brought within the statutes of limitations. Id. at 33, 35.

The Gelnaws claimed to have retained their former counsel in October 1996, by which time the only "conceivably viable" claims against the objectors were those subject to the six-year limitation period. Id. at 35. However, the Gelnaws admitted that their former counsel withdrew and "returned the file to them" three months later, on a date that was "several weeks . . . before the six-year statute of limitations expired." Ibid. Because the Gelnaws still had several weeks to pursue the "conceivably viable" claims with new counsel, the withdrawal of their former counsel did not have a "material adverse effect" on their interests. Ibid. (quoting RPC 1.16(b)). Without a harm to the Gelnaws arising from counsel's withdrawal, we upheld the dismissal on summary judgment of the malpractice claim against them. Ibid.

Thus, in Fraser, we determined that twenty-four days before the expiration of the statute of limitations was sufficient time for the attorneys to withdraw without a material adverse effect on their client's interest. Here, defendants withdrew from their representation of plaintiff approximately twenty-seven months prior to the expiration of the statute of limitations. That gave Dubler,

who was already familiar with the case as co-counsel, ample time and opportunity to file suit against Sills. In fact, Dubler, with the help of plaintiff's expert, considered doing so and chose not to. Thus, the trial court correctly determined that defendants' failure to file suit against Sills was not the proximate cause of plaintiff's alleged loss.[5]

Therefore, we affirm the trial court's decision granting defendants summary judgment and dismissing plaintiff's legal malpractice claim for failure to sue Sills.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] In light of this ruling, we need not address the trial court's alternative decision that plaintiff's legal malpractice claim concerning defendants' failure to sue Sills was also subject to dismissal based upon the collateral estoppel doctrine.

A-2718-20